EL PUEBLO, APELADO, *v.* BONELLI, APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 2ª.

No. 454.—Resuelto en febrero 5, 1913.

DERECHO PENAL—INSTRUCCIONES AL JURADO—PLIEGO DE EXCEPCIONES.—Las instrucciones al jurado incluídas en un pliego de excepciones que carece de la firma del juez sentenciador, no' tienen valor ni pueden ser consideradas por esta corte.

ID.—ERRORES NO PERJUDICIALES—DEFINICIÓN ERRÓNEA DE UN DELITO.—No es perjudicial al acusado el error que haya podido cometer el tribunal sentenciador al definir el concepto jurídico de un delito, cuando el acusado ha sido declarado culpable de otro de menor importancia.

ID.—ATAQUE CON INTENCIÓN DE COMETER HOMICIDIO—ATAQUE CON INTENCIÓN DE COMETER ASESINATO.—La doctrina sustentada por este tribunal en los casos del *Pueblo v. Dumas,* 14 D. P. R., 397 y *El Pueblo v. Llauger,* 14 D. P. R., 548 declarando que existe el delito de ataque con intención de cometer homicidio, es ratificada en el presente caso.

ID.—ERRORES QUE NO PERJUDICAN AL ACUSADO.—No constituye error perjudicial al acusado el ser declarado culpable de un delito de ataque con intención de cometer homicidio, por el fundamento de que la prueba demuestra un ataque con intención de cometer asesinato.

ID.—LOCURA—VEREDICTO CONTRARIO A LA EVIDENCIA.—No estimando el jurado probada la defensa de locura, no puede decirse que el veredicto de culpabilidad sea contrario a la prueba, por el mero hecho de que el acusado presentara pruebas tendentes a demostrar dicha defensa, pues las opiniones de los peritos no son obligatorias para los juzgadores.

ID.—MÓVIL DEL CRIMEN—DECLARACIÓN DE LA VÍCTIMA.—No hay regla alguna que impida a la víctima declarar sobre hechos presenciados por ella, aunque sirvan para demostrar el móvil del crimen.

ID.—INSTRUCCIONES AL JURADO.—Una corte puede rechazar en su totalidad una instrucción al jurado solicitada por el acusado, aunque solamente sea errónea en parte.

Los hechos están expresados en la opinión.

Abogado del Pueblo: *Sr. Charles E. Foote, Fiscal.*

Abogado del apelante: *Sr. Herminio Díaz Navarro.*

EL JUEZ ASOCIADO SR. ALDREY, emitió la opinión del tribunal.

El apelante, Pablo M. Bonelli, fué acusado ante la Sección 2ª. de la Corte de Distrito de San Juan, de un delito calificado por el Fiscal como atentado a la vida, imputándole que allá por el día 12 de octubre de 1910, en Loíza, que forma parte del Distrito Judicial de San Juan, ilegal, voluntaria y maliciosamente, con premeditación expresa y con el propósito deliberado de cometer asesinato, acometió armado de un revólver a su esposa María Luisa Piñero, disparándole tres tiros.

En vista de la alegación de no culpable hecha por el acusado, se celebró el juicio ante un jurado, quien lo declaró culpable del delito de ataque con intención de cometer homicidio. El acusado hizo entonces una moción a la corte para que le concediera un nuevo juicio y siéndole negado, fué pronunciada sentencia condenándole a sufrir la pena de dos años tres meses de presidio con trabajos forzados y al pago de las costas, contra cuyo fallo y resolución denegatoria de nuevo juicio, se ha interpuesto el presente recurso de apelación.

El alegato de errores presentado por el apelante para sostener sus recursos en solicitud de que se revoque la sentencia o se le conceda un nuevo juicio, consigna los siguientes fundamentos:

"1º. La corte erró en sus instrucciones al jurado, así en la definición del concepto jurídico del atentado a la vida, del asesinato y del homicidio, como en la afirmación de que dentro de una acusación del primero de dichos delitos, cabe la declaración de culpable de ataque con intención de cometer homicidio, como en lo que se refiere al acometimiento con circunstancias agravantes.

"2º. La corte erró al instruir al jurado en la forma que lo hizo sobre el acometimiento con circunstancias agravantes, y al negarse a instruirle que dentro de la acusación cabía un veredicto de simple acometimiento.

"3º. La corte terminó sus instrucciones al jurado en la forma siguiente:

" 'El veredicto, para concluir, lo podéis dar bajo cualquiera de estas formas: Declaramos al acusado *no culpable;* o declaramos al acusado culpable del *delito de atentado a la vida* o declaramos al acusado culpable del delito de *ataque con intención de cometer homicidio.* Estas son las tres formas de veredicto que vosotros podéis dar en este caso.'

"4º. Al tratarse de la teoría de la locura que la defensa introdujo y sobre la que practicó evidencia oral, dicen las instrucciones:

" 'La defensa de insanidad es una defensa que puede ser y a menudo es alegada *en casos en que la prueba del hecho es tan llena y completa que no podría acudirse a ningún otro medio de defensa para evitar una convicción y escapar a la pena consiguiente.'*

"5º. El veredicto es en absoluto contrario a la evidencia, pues no sólo el peso de la misma es contrario al supuesto delito de que se 'ha declarado convicto al acusado, si que patentiza la teoría sentada por la defensa en el juicio."

La lectura de ellos demuestra que los cuatro primeros motivos se basan en errores que el apelante sostiene, cometió el juez de la corte inferior al dar sus instrucciones al jurado.

En la transcripción del récord de la apelación que tenemos ante nosotros existe un pliego conteniendo instrucciones de la corte al jurado, pero no está autenticado con la firma del juez, por lo que no podemos considerarlas como tales y nos falta base para examinar los errores que por ellas se atribuyen a la corte. *El Pueblo* v. *Dones,* 9 D. P. R., 479; *El Pueblo* v. *Robles,* 10 D. P. R., 503, y *El Pueblo* v. *Coll,* 18 D. P. R., 361.

Cuando las instrucciones no han sido firmadas por el juez, no podemos estimar que ellas y no otras fueron las que transmitió al jurado y aun cuando tomadas por el taquígrafo de la corte por si solas, sin la firma del juez no podemos darle valor alguno.

Pero aun cuando por esa razón no podemos considerar los cuatro primeros motivos del alegato de errores, no sufrirá perjuicio el apelante, ya que el principal fundamento de su

apelación, esto es, que no existe el delito de ataque con intención de cometer homicidio de que ha sido convicto el apelante, y que no está comprendido como grado menor en una acusación de ataque con intención de cometer asesinato, son cuestiones ya resueltas por esta Corte Suprema en el caso de *El Pueblo* v. *Dumas,* 14 D. P. R., 397 a 406, y en el de *El Pueblo* v. *Llauger,* 14 D. P. R., 548, sin que tengamos motivos para variar el criterio entonces mantenido, por lo que lo expresado en esos casos es aplicable al presente; y en cuanto a los errores en las definiciones del concepto jurídico del atentado à la vida y del asesinato, no serían tampoco de considerar, porque, si los hubo, como el acusado no fué declarado culpable del delito acusado, sino de otro menor, no sufrió por ello perjuicio alguno. Véase también el caso citado de Dumas.

Así, pues, la cuestión que podemos considerar es la consignada en el quinto y último motivo de error, esto es, si el veredicto no sólo es en absoluto contrario a la evidencia sino que, por el contrario, lo que demuestra es la teoría sustentada en el juicio por la defensa.

La expresada teoría no es otra que la de la locura del acusado en el momento de cometer los hechos imputados por el Fiscal y sus testigos. En efecto toda la evidencia del representante del pueblo tendió a demostrar la existencia del delito imputado y en contraposición a ella presentó la defensa un gran número de testigos, todos los cuales tendían a demostrar la locura del acusado en el momento de realizar el hecho que se le imputó, exponiendo unos el carácter y temperamento del acusado, otros los antecedentes de familia sobre epilepsia y la opinión de algunos médicos de que su compañero, el Doctor Bonelli, estaba loco en los momentos de realizarlos. Sólo un testigo de la defensa, Angel Colón, cochero que ha sido por algún tiempo del acusado declaró, además, que la noche del suceso vió pasar por las calles a una señora y detrás un hombre que la decía "María Luisa, no huyas, que no te voy a hacer nada," sintiendo entonces varios disparos que se dirigían al aire, sin saber quien los hacía y que ambas personas

iban andando tranquilamente, resultando luego que eran el Dr. Bonelli y su esposa.

La prueba del Fiscal fué robusta, amplia y clara, confirmada en algunos particulares por la prueba de la defensa y sólo contradicha en parte por el citado testigo Angel Colón.

Consistió en la testigo, María Luisa Piñero, quien sustancialmente expuso que habiendo sido seducida por el acusado le exigió que reparase la ofensa casándose con ella, y por su negativa tuvo que comunicar a su padre lo ocurrido y, después de una entrevista de su padre y el Dr. Bonelli, éste se presentó por la noche en su casa y se casaron, quedándose allí una semana; que al fin de ésta, un domingo por la noche salió con su marido para la casa de éste y en el camino la amenazó diciéndole que viviendo con él le quedarían pocos días de vida porque la iba a matar, amenaza que ya le había hecho antes si lo obligaba a casarse; que la primera noche que pasó en casa de su esposo, como a media noche, despertó al sentir que la tocaron en un brazo; su marido le repitió que la iba a matar, cogió un pedacito de unas cosas blancas, las echó en un vaso con un poco de agua, y sacando una jeringuilla le dijo "esto es estricnina; te voy a matar," empeñándose, sin estar enferma, en ponerle una inyección en el cuello, a lo que se resistió, pero tuvo que ceder porque la amenazó con un revólver que le puso al pecho; que a la noche siguiente quiso hacer lo mismo y empezó a sacar unas pastillas y negándose la declarante a que le pusiera más inyecciones, sostuvieron una lucha durante la cual cayó al suelo, haciéndole luego, a la fuerza, tomar una pastilla azul que se sacó de la boca cuando él fué a buscar agua para que la pasara y tuvo vómitos; el miércoles siguiente mandó a buscar a su madre, pero no se atrevió a decirle lo que ocurría porque estaba delante su marido y en esa noche, 12 de octubre, lo vió que tenía una cuchilla plateada de çirujía y una botellita con algodones y después de una discusión entre ambos, porque teniendo miedo a su marido se negó a entrar en una habitación que él le indicaba, para que le buscara una cartera; al

ver que él se llevaba la mano atrás corrió para la calle, haciendo lo propio Bonelli detrás de ella, se metió la testigo en una fonda de donde salió porque una señora le dijo que un señor iba corriendo detrás de ella, siguió huyendo por las calles mientras su marido le decía "párate porque te mato" al mismo tiempo que disparaba tres tiros, oyendo otro más y una voz que decía "párese o disparo;" se metió en el cuartel de la policía a donde luego llegó su esposo con un guardia, diciéndole allí Bonelli, "¡Qué lástima que no te haya matado! ¡Ah pulso, como me fallaste!" insultándola también. Después de estos hechos se cruzaron entre ambos dos cartas, y mientras la de ella contiene palabras de olvido y de perdón para su marido y le ofrece salvarlo, por más que luego hallará reposo en la tumba dejándolo libre, la de él la insulta.

El Doctor Rivero, testigo de la defensa, entre otras cosas declaró haber reconocido al día siguiente, en la parte posterior del cuello de dicha señora, ciertas punzadas producidas con instrumento punzante.

Otro testigo del Fiscal, el policía Ernesto Berller, vió correr en esa noche a dos personas, una de ellas mujer, la que pedía auxilio y, al dirigirse a ellas, sintió tres disparos de revólver hechos por la persona que iba detrás de la mujer y contra ésta; entonces gritó al hombre que se detuviera y le disparó a su vez hiriéndolo, y cuando éste se detuvo resultó ser el Dr. Bonelli a quien llevó al cuartel donde éste le dijo, dirigiéndose a su esposa, que le dejara matar a aquella sinvergüenza.

Fidel Echevarría, Narciso Villafaña, Juan Moreira, todos policías, oyeron los disparos; en el cuartel quitaron al acusado un revólver con tres cápsulas disparadas y le oyeron decir las palabras antes mencionadas.

La última testigo del Fiscal, dueña de una fonda, confirma que esa noche quiso esconderse en su casa María Luisa Piñero porque un hombre la quería coger, salió de ella y luego oyó los disparos.

La relación que acabamos de hacer revela que, siendo cier-

ta, el Fiscal había probado plenamente su acusación, pero a pesar de esto, si el jurado no entendió suficientemente justificados los antecedentes a la noche de autos, pudo entender que el ataque en que se produjeron los disparos, fué debido a la cuestión y disputa surgida entre los esposos en los momentos en que salió a la calle y por tanto que su delito, por haber surgido en una súbita pendencia y arrebato de cólera, fué solamente el de ataque con intención de cometer homicidio.

Pero aunque la evidencia no demostrara el ataque de cometer el delito de homicidio, sino el de asesinato, no podría considerarse como error perjudicial al acusado ya que le benefició. *Thomas* v. *State,* 62 S. W., 919; *El Pueblo* v. *Figueroa,* 16 D. P. R., 373.

No puede, pues, sostenerse que el veredicto sea contrario a la evidencia ni que ésta sólo sostenga la teoría de la defensa. La evidencia probó un acto criminal por parte del apelante, y si bien se presentó otra de que fué realizado en un momento de locura, el jurado resolvió el conflicto al declarar culpable al acusado, rechazando así la teoría de la defensa y decidiendo que Pablo M. Bonelli estaba cuerdo y en su sano juicio cuando realizó el hecho de que le declaró convicto, ya que las opiniones de los peritos no son obligatorias para los juzgadores. *El Pueblo* v. *Sutton,* 17 D. P. R., 370.

Dice el apelante en su alegato: ''Las declaraciones del *deceased*—es decir, del perjudicado—no son evidencia 'competente para demostrar el motivo o causa de un delito. Esta proposición está indudablemente inclusa en la doctrina sentada en el caso de *People* v. *Shattuck,* 109 Cal., 673.'' En consecuencia sostiene, que María Luisa Piñero no es competente para declarar sobre lo ocurrido entre ella y el Dr. Bonelli, estando solos en su casa y sin testigos presenciales.

Hemos leído el caso citado, que es el de *El Pueblo* v. *Shattuck,* 109 Cal., 673, y si entonces declaró la corte que no se podía demostrar la malicia, deliberación y motivo del delito por las manifestaciones del interfecto (*deceased*) y que ésta

no era una evidencia competente, fué porque la declaración de la testigo era simplemente de referencia, ya que refería manifestaciones hechas por el interfecto tres o cuatro días antes del crimen y no se presentaba para demostrar lo ocurrido al recibir una carta, sino lo que ocurrió con posterioridad. Esa sentencia no tiene aplicación al presente, y no conocemos regla alguna que impida a la persona perjudicada declarar sobre hechos que ella ha presenciado, aunque sirvan para demostrar el móvil del crimen.

El último extremo del segundo motivo de error se establece porque la corte se negó a instruir al jurado, de que dentro de la acusación cabía un veredicto de simple acometimiento.

Respecto a este particular encontramos que la defensa propuso cuatro instrucciones escritas, siendo la segunda la siguiente:

"Que el acusado puede ser declarado culpable también de simple acometimiento, o de simple agresión, sin circunstancias agravantes, si el jurado cree que no se probó que los disparos fueron dirigidos contra persona alguna."

No aparece de tal pliego providencia admitiendo o desestimando dichas instrucciones o cuáles fueron dadas al jurado y cuáles denegadas, según ordena el artículo 266 del Código de Enjuiciamiento Criminal, pero como alegado en la moción de nuevo juicio como el cuarto de sus fundamentos, que la corte había rechazado tres de ellas, consta en la resolución denegando el nuevo juicio, que esa segunda instrucción fué denegada, podremos considerar si al hacerlo así la corte estuvo acertada o no.

La citada instrucción no contiene una exposición correcta de la ley, porque si la evidencia llevaba al ánimo del jurado la convicción de que los disparos no fueron dirigidos contra persona alguna, si sólo iban dirigidos al aire sin ninguna intención criminal, no era consecuencia necesaria que el acusado fuera culpable del delito a que se refiere la instrucción

y estuvo justificada la corte al rechazarla, ya que cuando una instrucción es errónea, aunque lo sea sólo en parte, puede rehusarla porque no está obligada a modificarla.

*People* v. *Wong Sang Lung,* 84 Pac. Rep., 843.

*State* v. *Nicholls,* 50 La. Ann., 699.

*Toops* v. *The State,* 92 Ind., 13.

*Lawrence* v. *The State,* 20 Tex. App., 536.

Además, la corte no hubiera estado justificada en dar esa instrucción, ya que siendo la teoría de la acusación la de ataque con intención de cometer asesinato, la única de la defensa fué la insanidad del acusado.

Por las razones expuestas deben desestimarse los dos recursos de apelación interpuestos por el acusado y confirmarse la sentencia apelada.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados MacLeary, Wolf y del Toro.