EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* GREGORIO ACEVEDO, acusado y apelante.

No. 4556.—*Sometido:* Febrero 11, 1932. *Resuelto:* Abril 13, 1932.

*José D. Rodríguez,* abogado del apelante; *R. A. Gómez,* abogado de *El Pueblo,* apelado.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

J. González Mercado formuló denuncia contra Gregorio Acevedo, imputándole la comisión de un delito de hurto menor en los siguientes términos:

"Que en 15 de marzo de 1931, y en barrio Lares, del Distrito Judicial Municipal de Lares, que forma parte del Distrito Judicial de Aguadilla, P. R., allí y entonces el referido acusado voluntaria, maliciosa e ilegalmente sustrajo de la propiedad del denunciante, una gallina color blanco 'Leghorn' que tenía un valor de $3.00, la que negoció a su hermano Manuel y la llevaron a Arecibo, P. R., privando de esta manera la propiedad de su legítimo dueño el denunciante.—Hecho contrario a la ley.—Siendo testigos: Juan Alvarez y Ramón Alvarez."

El acusado fué condenado, en apelación, por la Corte de Distrito de Aguadilla a pagar diez dólares de multa y en defecto de pago a sufrir diez días de arresto. No conforme, apeló para ante este tribunal, señalando en su alegato la comisión de tres errores cometidos a su juicio por la corte al desestimar cierta excepción previa, al declarar sin lugar una moción de sobreseimiento y al admitir y apreciar la prueba.

Por el primer error se alega que la denuncia no contiene hechos suficientes para imputar el delito de hurto, ya que no dice que el acto se cometiera *con intención criminal*.

La ley aplicable lo es el artículo 426 del Código Penal, que en castellano lee como sigue: ''Hurto (*larceny*) es el acto de sustraer, con intención criminal, bienes muebles o semovientes, pertenecientes a otra persona.'' Y en inglés dice: ''Larceny is the felonious stealing, taking, carrying, leading, or driving away the personal property of another.''

Siendo parte de la definición del delito las palabras ''sustraer, con intención criminal'' (*felonious stealing*), lo correcto y lo enteramente conforme con la ley, la jurisprudencia y la buena práctica hubiera sido usarlas textualmente en la denuncia.

El artículo 426 de nuestro Código es igual al 484 del Código Penal de California, y la jurisprudencia de dicho estado se ha expresado como sigue:

''En el derecho común la acusación por delito grave debe alegar que el acto imputado fué realizado 'criminalmente'. Sin embargo, desde mucho tiempo ha la regla en California ha sido que no es necesario usar esa palabra al imputar un delito grave cuando ella no es usada al definir el delito y que aun cuando la palabra fuere usada en el estatuto, su omisión no es fatal al usarse palabras equivalentes.'' 14 Cal. Jur. 57.

Para sostener la última conclusión se cita el caso de *The People* v. *Manuel López*, 90 Cal. 569, en el que la Corte Suprema se expresó así:

"Se alega que la acusación mediante la cual el acusado fué juzgado y convicto del hurto de un caballo es fatalmente defectuosa toda vez que deja de alegar que el delito se cometió criminalmente.

"En el derecho común, un simple hurto, ora fuere mayor o menor, era un delito grave y se definía como la substracción de bienes muebles pertenecientes a otra persona. La palabra 'criminalmente' era, por tanto, esencial a la validez de una acusación por hurto, y se ha resuelto uniformemente que al ser usada esta palabra en un estatuto o constitución sin ser definida, debe ser interpretada con el significado dádole por el derecho común. Pero nuestro estatuto ha modificado la regla de procedimiento del derecho común en muchos respectos importantes y ha prescrito ciertas reglas simples mediante las cuales debe determinarse la suficiencia de tales alegaciones. Estas reglas, o las que de ellas tengan relación directa con la cuestión que estamos considerando, están contenidas en los siguientes artículos del Código Penal:

"El artículo 948 dispone que 'todas las formas de alegación en acciones penales, y las reglas por virtud de las cuales se determina la suficiencia de las alegaciones, son las que prescribe este código.'

"El artículo 957 dispone que 'las palabras usadas en una acusación serán interpretadas en su acepción usual en el lenguaje corriente.'

"El artículo 958 provee que 'no es necesario emplear estrictamente en la acusación las palabras en una ley para definir un delito público, sino que pueden emplearse otras palabras que tengan el mismo significado.'

"El artículo 959, inciso 6, dice que la acusación es suficiente si de ella se deduce 'que la acción u omisión considerada como delito está expuesta clara y distintamente en lenguaje corriente y conciso, sin repetición y de tal modo que facilite a cualquier persona de inteligencia común el conocer lo que se quiere decir.'

"El artículo 960 provee además que 'ninguna acusación es insuficiente . . . a causa de algún defecto o imperfección de forma siempre que . . . no tienda en lo esencial a perjudicar los derechos del acusado.'

"Y el artículo 1258 dispone que 'después de celebrada la vista de la apelación, la corte dictará sentencia sin parar mientes en los errores o defectos técnicos . . . que no afecten los derechos substanciales de las partes.'

"La acusación en este caso imputa al acusado 'un delito grave' cometido de la manera siguiente: 'hurtado, substraído y llevado consigo' un caballo, que es una propiedad mueble, perteneciente a

la persona en ella nombrada. No se presentó objeción alguna a la acusación en la corte inferior y la cuestión de su suficiencia se suscita por primera vez en esta apelación.

"El artículo 484 del Código Penal define el delito de hurto en la siguiente forma: 'Hurto es el acto de substraer, con intención criminal, bienes muebles pertenecientes a otra persona.' Y el inciso 3 del artículo 487 del Código Penal hace que la substracción de un caballo sea hurto mayor, que es un delito grave de acuerdo con los estatutos, y castigable con pena de presidio en la penitenciaría del estado. La palabra 'substraer' (steal) aquí usada, tiene según se verá más tarde, un significado claro y bien definido, y es quizá en su uso común y acepción ordinaria tan bien comprendida como cualquier palabra en el idioma inglés. Webster la define como 'tomar y llevar consigo criminalmente los bienes muebles de otra persona'; citando a Blackstone . . . .

"Por tanto, al sostener que el acusado, quien debe presumirse que es una persona de inteligencia común, no supiera lo que quería decirse al imputársele el haber sustraído un caballo perteneciente a otra, es simplemente prepóstero.

"Juzgando la suficiencia de esta acusación aplicando las anteriores reglas, nos sentimos obligados a llegar a la conclusión que cuando en la acusación se omite la palabra 'criminalmente' y se usa la palabra 'substraer', se entenderá que se imputa la intención criminal con que el acto fué cometido, y el delito al ser así imputado en una acusación será considerado como que ha sido imputado de acuerdo con la fraseología del Código. Y una acusación por el delito de hurto que contiene ambas palabras o cualquiera de ellas será considerada válida, si se halla que es suficiente en todos los demás respectos. Por tanto, de ello se desprende que como la omisión de la palabra 'criminalmente' en la acusación en este caso no tendió a perjudicar un derecho substancial del acusado, la sentencia apelada debe ser confirmada, y así lo ordenamos." *People* v. *López*, 90 Cal. Rep. 571.

No sólo es igual la ley sustantiva en que se basó la Corte Suprema de California, a la muestra, si que también son iguales todos los preceptos legales que en la opinión se citan. Las secciones 948, 957, 958, 959, 960 y 1258 del Código Penal de California son idénticas a los artículos 66, 80, 81, 82, 83 y 362 de nuestro Código de Enjuiciamiento Criminal.

. A la luz de la ley y la jurisprudencia citada, examinemos ahora la denuncia presentada en este caso. En ella se alega que el acusado "voluntaria, maliciosa e ilegalmente sustrajo . . . una gallina . . . que tenía un valor de $3 la que negoció . . . privando de esa manera la propiedad de su legítimo dueño el denunciante."

La palabra "voluntariamente" aplicada a la intención con que se ejecute un acto, implica el propósito o voluntad de cometer el acto y el vocablo "maliciosamente" denota "la comisión de un acto dañoso, intencionalmente, sin justa causa o excusa, la esciente infracción de la ley, en perjuicio de otro." (Art. 559 del Código Penal). "Ilegalmente", significa lo que es contrario a la ley y "sustrajo" tiene en español la significación de "steal" en inglés. Dice el Diccionario de la Academia Española: "Substraer . . . 2. Hurtar, robar fraudulentamente . . ."

Siendo ello así, tenemos una sustracción, esto es, un hurto, cometido en contra de la ley, en este caso el artículo 426 del Código Penal, con la voluntad de cometerlo, y actuando dañosamente, intencionalmente, sin justa causa o excusa. Y si a ello se agrega que en la denuncia se dice además que el acusado negoció la gallina que sustrajo, privando así de su propiedad a su dueño el denunciante, puede y debe concluirse que la falta cometida al no alegarse expresamente la "intención criminal" que exige el estatuto, quedó subsanada por el uso de otras palabras que implican que el acto imputado se realizó con dicha intención.

█ El segundo error se formula así:

"SEGUNDO ERROR:—La Corte de Distrito de Aguadilla cometió error de derecho al declarar sin lugar la moción para sobreseer la acusación, por constituir la denuncia la comisión de un delito mayor al imputado al acusado."

Es cierto que se probó en el juicio que cuando el denunciante formuló la denuncia no tenía conocimiento directo de que fuera el acusado el autor del delito, pero también lo es que la gallina hurtada era de su pertenencia y fué in-

formado del hurto y de la actuación del acusado por los· testigos que en la denuncia expresa, uno de los cuales la tenía a su cuidado.

La denuncia no dice que el denunciante conocía los hechos por propio conocimiento, ni tenía que decirlo (*El Pueblo* v. *Nochera,* 23 D.P.R. 605, *El Pueblo* v. *Maymón,* 24 D.P.R. 61), y la prueba demostró que los conocía cuando la formuló por información que no sólo él entonces si que también la Corte luego creyó cierta.

■■ Examinemos el error tercero. Se permitió al denunciante que declarara sobre cierta admisión que sobre su culpabilidad le hizo el propio acusado, y éste sostiene que la declaración era inadmisible porque no se siguieron las reglas aplicables a las confesiones. Repetidamente hemos resuelto que no es lo mismo una admisión que una confesión.

Se insinúa que la causa está viciada desde su origen por ser el denunciante un márshal y haberse aprovechado de su cargo para perseguir al acusado, obteniendo la admisión de éste en su propia oficina.

Según el récord el denunciante márshal declaró así:

"P.—Usted de conocimiento propio no sabe nada en este caso? —R.—Por manifestaciones espontáneas del acusado.—P.—Qué manifestaciones le hizo este acusado?—R.—Espontáneamente se presentó a mi oficina y me dijo que retirara la denuncia porque él iba a ir a Arecibo con su hermano e iba a conseguir la gallina."

Llamado a declarar nuevamente contestó:

"Sí, señor; lo confesó; primeramente negó pero después lo confesó, que había unos señores allí que puedo citar; primeramente negó pero después me dijo 'venga acá; si usted necesita ir yo lo llevo; yo lo puedo ir a llevar o le puedo pagar a usted la gallina.' "

Con respecto a la actuación del dicho denunciante márshal, aparece del récord que uno de los testigos de descargo, Miguel Hernández declaró:

"R.—Sé; yo estaba en mi oficina y entonces me mandó a buscar porque lo tenían arrestado y yo bajé y lo ví y le pregunté 'qué te pasa?' y me dijo 'que don Juan me ha mandado a buscar y me ha

metido aquí a la cárcel' y entonces yo lo fié.—P.—Cómo le dijo él? ¿Por qué le dijo él que lo habían arrestado?—R.—Porque Juan González le había dicho que él se había robado una gallina.—P.—Él no le hizo ninguna otra manifestación?—R.—Me dijo que Juanito quería que él le pagara tres pesos y él le dijo que no se los pagaba porque él no le había cogido ninguna gallina.''

Y que el propio acusado, dijo:

''P.—El dijo aquí que usted mismo había ido a su oficina y había dicho que usted le había hurtado una gallina.—R.—Yo estaba en su oficina porque él me mandó a buscar y me dijo que tenía una denuncia contra mí por una gallina 'leghorn' que le habían sustraído de la casa de él; y entonces me dijo que si yo me hacía responsable a pagarle esa prenda él levantaba la denuncia y como yo no tenía culpa no me podía hacer responsable a eso.—F.—Lo mandó al depósito entonces?—R.—Sí, señor; me mandó al depósito.''

A un márshal a quien se le hurta alguna propiedad, puede denunciar y perseguir el hurto como cualquier otro ciudadano. No tiene más derechos y atribuciones en tal caso que un simple ciudadano. Si se extralimita, o abusa o viola el derecho ajeno, cometerá alguna acción reprobable o penable, según sea el caso, que puede y debe denunciarse, investigarse y perseguirse, y penarse si resultare cierta, independientemente. El delito de hurto, sin embargo, se juzgará por sus propios méritos. La corte no estaba obligada a dar entero crédito a lo dicho por el acusado y su testigo en cuanto a las actuaciones del márshal. De ser ciertas, podrían de manifiesto una conducta incorrecta por parte del funcionario, pero no viciarían de nulidad el juicio a virtud del cual fué condenado el acusado en la corte de distrito.

Refiriéndonos ahora, en general, a la suficiencia de la prueba, diremos que no estamos conformes con el apelante en cuanto a que la aportada por el Pueblo no sea bastante.

Prescindiendo de la admisión del acusado al denunciante que no tiene mucha fuerza en verdad, quedan las declaraciones de Juan Alvarez y de su hijo Ramón, encargados de la finca del denunciante en donde éste tenía su gallina. Ellos imputan directamente el hecho de la sustracción al acusado.

Fueron testigos presenciales a quienes la corte dió crédito y analizados sus testimonios no los consideramos imposibles, ni manifiestamente ilógicos.

Parece conveniente citar la siguiente jurisprudencia que tomamos de 17 R.C.L. 22. Dice:

"Es esencial que los bienes substraídos pertenezcan a persona distinta al que los hurtó o que ellos estén en posesión de alguien con derecho a los mismos. Sin embargo, para que la substracción sea hurto no es necesario que la persona de quien se hurtó la propiedad tenga el dominio general o aún el derecho de posesión. De tal suerte, si una persona que originalmente hurtó el animal y lo vendió, lo substrae nuevamente de un comprador inocente, cometiéndose la segunda substracción para ocultar la primera, ello constituye el delito de hurto. Y no es esencial que el ladrón tenga conocimiento de quién es el dueño. Es suficiente si sabe que la propiedad no le pertenece y la sustrae para privar de ella a su verdadero dueño." 17 R.C.L. 22.

No habiéndose cometido ninguno de los errores señalados, *debe confirmarse la sentencia recurrida.*

Los Jueces Asociados Señores Wolf y Córdova Dávila no intervinieron.