*Debe anularse el auto expedido.*

EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAFAEL DONES, acusado y apelante.

Núm. 7808.—*Sometido:* Noviembre 28, 1939. *Resuelto:* Marzo 6, 1940.

*José C. Aponte,* abogado del apelante; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Rafael Dones, acusado y convicto ante la Corte de Distrito de Guayama de un delito de infracción del artículo 128 del Código Penal, ha interpuesto apelación contra la sentencia de dos años de presidio impuéstale por la corte inferior. Basa su recurso en catorce señalamientos de error, los cuales discutiremos en el mismo orden en que aparecen expuestos en el alegato.

■ Que la corte inferior erró al no sostener la excepción perentoria, en la que se alegaba que la acusación no expone hechos cons-

titutivos de delito alguno; y al declarar sin lugar la moción de sobreseimiento o suspensión de sentencia.

El artículo 128 del Código Penal vigente lee así:

"Artículo 128.—ESCRITOS FALSOS. Toda persona que prepare algún libro, papel, documento, registro, instrumento escrito, u otro objeto falsificado o antedatado con el propósito de presentarlo o permitir que se presente con algún fin fraudulento o avieso, como genuino y verdadero, en algún juicio, procedimiento, o acusación autorizada por la ley, será reo de 'felony' (delito grave)."

Arguye el acusado apelante que de la acusación "no aparece que a la fecha en que se entregó la orden de excarcelación a que se contrae dicha acusación, existiera algún juicio, procedimiento o acusación (*inquiry*) autorizado por la ley y de los contemplados por el dicho artículo 128 antes referido."

La acusación sigue estrictamente el lenguaje del estatuto. Después de alegar que el acusado preparó, falsificando la firma del Juez Municipal de Patillas, una orden de excarcelación dirigida al Alcaide de la Cárcel de Patillas, alega específicamente que lo hizo "con el propósito de presentar, como al efecto presentó al citado alcaide de cárcel municipal y *en un procedimiento autorizado por la ley,* el referido papel, documento o instrumento escrito, como si fuera genuino y verdadero y con el fin fraudulento y avieso de obtener como al efecto obtuvo la libertad del individuo Julio Rivera que se encontraba preso bajo la custodia del alcaide de cárcel de referencia, en la cárcel municipal de Patillas, P. R." (Bastardillas nuestras.)

La excepción perentoria que discutimos no fué formulada en el acto de la lectura de la acusación. Fué después de haberse practicado la prueba que se levantó la cuestión sobre insuficiencia de la acusación.

La acusación es a nuestro juicio suficiente. El acusado fué informado de que se le imputaba haber falsificado una orden de excarcelación para sacar de la cárcel a una persona que estaba allí detenida a virtud de un procedimiento o "*inquiry*" autorizado por la ley. Pudo el acusado solicitar

de la corte que se ordenara al fiscal exponer en forma más detallada la naturaleza del procedimiento a virtud del cual se encontraba preso Julio Rivera. No lo hizo así y optó por hacer alegación de "no culpable." Si la prueba sostiene las alegaciones de la acusación, la sentencia deberá ser confirmada. No hubo error en la desestimación de la excepción perentoria. Tampoco se cometió el segundo error.

■■ Que fué error de la corte inferior admitir, y negarse a eliminar del récord, la declaración del policía Antero Díaz, quien no aparecía como testigo al dorso de la acusación.

Antero Díaz fué el policía que arrestó y condujo a la cárcel al individuo Julio Rivera. Al ser llamado como primer testigo del Pueblo, se opuso la defensa, alegando que su nombre no aparece al dorso de la acusación. La corte resolvió que en uso de su discreción admitiría su testimonio. Tomó excepción la defensa y alegó que la declaración de un testigo traído a última hora constituye una sorpresa para el acusado. No aparece del récord que la defensa solicitara la concesión de un término adicional para preparar su prueba. Declaró el testigo que él sorprendió a Julio Rivera riñendo con otro, le arrestó y lo llevó a la cárcel municipal, entregándolo allí al alcaide. La defensa no hizo repregunta alguna. No hubo a nuestro juicio ni abuso de discreción ni perjuicio alguno para el acusado. Véanse: *El Pueblo* v. *Román,* 18 D.P.R. 219, y *El Pueblo* v. *Egipciaco,* 49 D.P.R. 411. No erró la corte al admitir, ni tampoco al negarse a eliminar del récord la declaración del policía.

■ Que la corte inferior erró al permitir que el alcaide de la cárcel declarara sobre la confesión hecha por el acusado, sin haberse probado antes con prueba independiente de tal confesión los elementos del *corpus delicti.*

Comenzó el alcaide su declaración, diciendo que Julio Rivera estaba en la cárcel, bajo su custodia, y que había sido llevado allí por el policía Antero Díaz; que lo puso en libertad mediante una orden de excarcelación que le llevó el acusado

y que es la misma que le exhibía el fiscal; que al día siguiente estuvo en la corte municipal llevando consigo la orden de excarcelación y que el juez le dijo que aquélla no era su firma y le preguntó quién le había llevado dicha orden; que entonces él le dijo que fué Rafael Dones, el acusado; que el juez mandó a buscar a Dones y éste no negó que él había firmado la orden; que el acusado le dijo al juez ''que la había firmado porque allí se estaba impuesto a hacer eso allí''; que el acusado hizo esas manifestaciones voluntariamente, sin que se le hicieran ofertas ni amenazas. La defensa anotó su excepción.

No erró la corte inferior al admitir dicha declaración. Antes de que el fiscal tratase de probar la confesión del acusado, ya había establecido como hechos esenciales de la acusación que en la cárcel municipal había un hombre arrestado; que ese hombre había sido puesto en libertad mediante orden de excarcelación entregada al alcaide por el acusado; y que al exhibírsele dicha orden al juez municipal éste reconoció que su firma había sido falsificada. Siguiendo el orden natural y lógico de una investigación se llamó a la persona que había entregado la orden de excarcelación al alcaide de la cárcel. Lo declarado por esa persona en ese momento es admisible en su contra. La corte tiene discreción para variar el orden de la prueba y puede permitir que se presenten en evidencia admisiones del acusado antes de probarse el *corpus delicti.* *People* v. *Watters,* 202 Cal. 154; *People* v. *Bianchino,* 5 C. A. 633, 91 P. 112; *People* v. *Jones,* 123 Cal. 65. No hay duda alguna de que el *corpus delicti* quedó establecido independientemente de dichas admisiones.

■ No erró la corte inferior al admitir en evidencia la sentencia dictada por la Corte Municipal de Patillas contra Julio Rivera por el delito de alterar la paz pública. Dicha sentencia era admisible para establecer el hecho de que ante dicha corte se siguió un procedimiento criminal, que tuvo su origen en el arresto de Julio Rivera por el policía Antero Díaz.

█ Que la corte inferior cometió error al dar al jurado la siguiente instrucción:

"El vocablo 'procedimiento', según lo define el Diccionario de la Real Academia de la Lengua Castellana, significa: acción de proceder, método de ejecutar alguna cosa, actuaciones por medio de trámites judiciales o administrativos o como se define dicho vocablo en inglés: la palabra procedimiento abarca cualquier paso o actuación llevada a cabo en el curso de una acción legal. La palabra procedimiento (*proceeding*) tiene una significación lata e incluye cualquier paso efectuado o llevado a cabo en un caso, bien sea por la corte o por cualquiera de las partes en el mismo y, por último, en su sentido técnico legal, dicha palabra procedimiento significa todos o cualquiera de los pasos o medidas adoptadas en la prosecución o defensa de una acción, ya sea civil, ya sea criminal o administrativa.

"Nuestro Código de Enjuiciamiento Criminal establece el procedimiento a seguir para poner en libertad a una persona que se encuentre en prisión preventiva. Este procedimiento consiste en la prestación de una fianza por el acusado con fiadores abonados, por la cuantía que se le haya fijado; la aprobación y admisión de dicha fianza por funcionario competente; la expedición de la orden o auto de excarcelación por cualquiera de los funcionarios judiciales autorizados para ello por la ley, y la entrega de dicha orden o auto de excarcelación al oficial encargado de la custodia del detenido, o sea al alcaide de cárcel.

"A la luz de las disposiciones del artículo 128 del Código Penal, que estamos analizando, el procedimiento estatuído en nuestro Código de Enjuiciamiento Criminal para excarcelar a una persona detenida en la cárcel por un delito público, es un procedimiento autorizado por la ley, al igual que lo son otros procedimientos estatuídos en el mismo Código de Enjuiciamiento Criminal, tales como la cancelación de una fianza, el procedimiento de caución para no turbar la paz pública, el procedimiento para la confiscación de una fianza, el procedimiento de desacato, el procedimiento de desacato por perjurio, el procedimiento de hábeas corpus y otros."

Arguye el apelante que al instruir al jurado en la forma que antecede "el Hon. Juez de Distrito se inmiscuyó en cuestiones que eran de la única y exclusiva atribución y resolución de los caballeros que integraban el jurado"; y que al instruir

al jurado en la forma indicada, la corte estaba expresando una opinión acerca de la prueba.

La argumentación del apelante es a todas luces frívola. El artículo 266 del Código de Enjuiciamiento Criminal provee que "al formular al jurado el resumen de lo que se somete a su deliberación, el tribunal deberá manifestarle todos los puntos de derecho necesarios para su información." La definición de lo que de acuerdo con el artículo 128 del Código Penal constituye un "procedimiento autorizado por la ley," es una función que corresponde al juez que preside el tribunal. En el caso de autos no erró la corte al instruir al jurado en el sentido de que arrestar a una persona, encarcelarla, prestar una fianza y expedir una orden para su excarcelación constituyen un procedimiento autorizado por la ley. La determinación de si en el caso de autos hubo un arresto y encarcelación; de si se utilizó una orden de excarcelación falsificada para obtener la libertad del preso; y de si fué o no el acusado la persona que falsificó dicha orden, era de la exclusiva competencia del jurado, por tratarse de puras cuestiones de hecho. No encontramos en la instrucción arriba transcrita nada que pueda ser considerado como una intromisión por parte de la corte en las funciones del jurado.

 Que la corte inferior erró al instruir al jurado en el sentido de que la orden de excarcelación fué admitida en evidencia a todos los efectos legales.

Sostiene el apelante que la orden fué admitida únicamente para probar que ésa fué la misma orden que el acusado le llevó al alcaide de la cárcel; y que no fué ofrecida en evidencia para ningún otro fin.

Del récord aparece que el documento fué identificado por el alcaide como la orden de excarcelación que le fué entregada por el acusado y a virtud de la cual el preso fué puesto en libertad. La corte la admitió para probar esos extremos. El fiscal anunció que más tarde probaría que la firma no era la del juez municipal. Más adelante, al declarar el juez muni-

cipal Sr. Bauzá, se le mostró la orden de excarcelación ya admitida en evidencia, para que dijera si la firma era suya. Respondió el testigo en la negativa, declarando que la firma era falsificada. Después de identificar como suya la firma que aparecía en otro documento marcado con un número ocho, el testigo declaró así:

"P.—Este otro documento que tiene en tinta roja un número uno, El Pueblo v. Julio Rivera, ¿de quién es esa firma?

"R.—Está firmado por otra persona, no es la firma mía.

"Fiscal: Quiero que el secretario me identifique éste que tiene el número ocho, con sus iniciales. Y éste está identificado.

"Juez: No, ése está admitido.

"Fiscal: Admitido ya como prueba."

Siguió después un largo interrogatorio del juez municipal alrededor de la orden de excarcelación, en el que intervino el abogado defensor, sin que aparezca del récord que éste se opusiera en manera alguna al uso del documento para probar el hecho de la falsedad de la firma. El documento, *Exhibit* 1 del Pueblo, o sea la orden de excarcelación falsificada, fué sometido en unión de siete otros *exhibits* que contenían las firmas indubitadas del acusado y del juez municipal, al perito calígrafo Sr. Timothée para su estudio e informe. En su testimonio ante el jurado, que cubre 20 páginas del récord, el perito calígrafo declaró, sin oposición alguna por parte de la defensa, que las firmas en los documentos números 1 y 8 no habían sido hechas por la misma mano; y que los caracteres de letra en la orden de excarcelación (*exhibit* 1) y en los documentos numerados del 2 al 7, habían sido hechos por la misma mano.

No existe el error señalado.

■ Que la corte inferior erró al instruir al jurado en la forma siguiente:

"Manifestaciones hechas por el acusado en cualquiera época, que envuelven una admisión de su culpabilidad, son admisibles como prueba, si no aparece que fueron obtenidas mediante amenaza o

promesa, sino que fueron hechas voluntariamente y sin coacción de clase alguna.''

La instrucción es a nuestro juicio correcta. Cuando las manifestaciones del acusado ofrecidas en evidencia equivalen a una confesión de culpabilidad, el fiscal está obligado a demostrar previamente que la confesión fué hecha voluntariamente y no bajo la influencia de promesas o de amenazas. *El Pueblo* v. *Flores,* 17 D.P.R. 189; *El Pueblo* v. *Rosado,* 17 D.P.R. 441; *El Pueblo* v. *Valle,* 29 D.P.R. 555. Cuando las declaraciones del acusado no constituyen una confesión y sí una admisión, el fiscal no está obligado a probar previamente el carácter voluntario de las mismas. *El Pueblo* v. *Domínguez Pérez,* 39 D.P.R. 664; *El Pueblo* v. *Acevedo,* 43 D.P.R. 340; *People* v. *Hoy Yen,* 34 Cal. 176; *People* v. *Neary,* 104 Cal. 373; *People* v. *Ammerman,* 118 Cal. 23; *People* v. *Kelley,* 146 Cal. 119; *People* v. *Weber,* 149 Cal. 325; *People* v. *Willard,* 150 Cal. 543; *People* v. *Wilkins,* 158 Cal. 530; *People* v. *Adams,* 198 Cal. 454; *People* v. *Schoon,* 177 Cal. 678.

Las declaraciones del acusado ante el juez municipal no equivalen a un confesión del delito que se le imputaba. Él solamente admitió que había firmado la orden de excarcelación porque allí se acostumbraba hacer eso. Del récord se desprende claramente que el acusado actuó voluntariamente.

 Que la corte inferior erró al instruir al jurado en cuanto a que prueba voluntariamente suprimida se presume adversa.

Al terminar la presentación de la prueba de cargo, dijo el fiscal:

''Sr. Juez, nosotros tenemos varios testigos más, pero son prueba de carácter acumulativo, por lo tanto, renunciamos a ella y hemos terminado nuestro caso.''

La instrucción de que se queja el apelante lee así:

''Se presume que la prueba voluntariamente suprimida sería adversa a la parte que la suprimió, excepto cuando esa prueba es de carácter acumulativo o inferior a la de otros testigos que han declarado en el juicio, en cuyo caso no constituye esa supresión de

prueba voluntariamente ni sostiene por tanto la inferencia de que de haber declarado los testigos ausentes, sus declaraciones hubieran sido adversas a la parte que no las produjo."

Del récord aparece que después de haberse retirado el jurado a deliberar, el abogado defensor tomó excepción. Además de ser tardía una excepción así tomada, del récord no consta que el abogado defensor solicitase de la corte que enmendara o ampliara sus instrucciones sobre el particular.

La instrucción es a nuestro juicio correcta. La renuncia de prueba de carácter acumulativo, no es la supresión voluntaria de prueba a que se refiere el estatuto. El fiscal no está obligado a presentar toda la evidencia de que puede disponer para sostener las alegaciones de la acusación. Cuando, a su juicio, un hecho está suficientemente probado, puede renunciar el resto de la prueba de que dispone para establecer el mismo hecho. Y si lo hace expresa y abiertamente, en presencia y con el consentimiento de la corte y sin objeción por parte de la defensa, esa renuncia no crea presunción alguna en su contra. Si la defensa tenía motivos para creer que el testimonio de los testigos renunciados por el fiscal le hubiera sido favorable, bien pudo llamarlos a declarar como testigos de defensa. Allí estaban dichos testigos, bajo las reglas de la corte, y cualquiera de las partes podía utilizar su testimonio. No aparece de los autos nada que demuestre que a la defensa se le impidiera utilizar dichos testigos. Véanse: *El Pueblo* v. *Campán*, 34 D.P.R. 107; *El Pueblo* v. *Ramírez*, 50 D.P.R. 234.

 Que la corte inferior erró al no transmitir al jurado la siguiente instrucción:

"La prueba pericial debe ser considerada con gran cautela por los señores del Jurado ya que es prueba a base de conclusiones y deducciones."

Toda la argumentación de este señalamiento se basa en la sección 1127–b del Código Penal de California, que provee que cuando en la vista de un caso criminal se presenta la

declaración de un perito, la corte deberá instruir al jurado, substancialmente, como sigue:

"Peritos debidamente calificados pueden expresar sus opiniones sobre las cuestiones en controversia en un juicio. Para ayudar al jurado a decidir tales cuestiones, éste puede considerar la opinión con las razones que para sostenerla haya dado el perito que la emitiera. El jurado no está obligado a aceptar la opinión de ningún perito como concluyente, pero debe darle el peso a que según su juicio tenga derecho. El jurado puede, sin embargo, no tomar en consideración tal opinión, si llegase a la conclusión de que no es razonable."

No se ha llamado nuestra atención hacia estatuto alguno de Puerto Rico que imponga a nuestras cortes de distrito obligaciones similares a las que impone el estatuto de California.

Nos inclinamos a creer que si al redactar su solicitud de instrucción la defensa la hubiese ajustado al estatuto de California, seguramente la corte inferior no se hubiese negado a trasmitirla al jurado. Existe gran diferencia entre lo que requiere dicho estatuto y lo que pretendió la defensa en su instrucción denegada.

En *El Pueblo* v. *Sutton,* 17 D.P.R. 345, 370; *El Pueblo* v. *Bonelli,* 19 D.P.R. 69, citados por el apelante, se sentó una doctrina idéntica a la del estatuto de California, al resolver que la opinión de un perito no es obligatoria para los juzgadores; y que un tribunal al apreciar la prueba pericial, no está obligado a aceptar las conclusiones de un perito. Las instrucciones dadas por la corte inferior con referencia a la evidencia y a las funciones del jurado en cuanto a su peso y apreciación fueron amplias, correctas y suficientes para la protección del acusado.

No hubo error en la denegación de tal instrucción. Véanse: *El Pueblo* v. *Dávila,* 37 D.P.R. 889; *People* v. *Hales,* 23 C. A. 731, 139 P. 667; Blashfield "Instructions to Juries," Vol. I, pgs. 809–810; *El Pueblo* v. *Ramírez,* 50 D.P.R. 235.

 Aparece del récord que al leer el veredicto rendido por el jurado y darse cuenta de que éste se había equivocado en cuanto a la nomenclatura del delito, la corte suplicó al jurado que volviera a considerar su veredicto; que a petición del fiscal y sin oposición de la defensa, se entregó al jurado un nuevo modelo, y se ordenó que el primer veredicto quedase en los autos de la causa; que el jurado se retiró al cuarto de deliberaciones y regresó más tarde, entregando su veredicto al juez; y que éste lo declaró formal.

Sostiene el apelante que el procedimiento seguido por la corte inferior es erróneo; que la corte debió informar e instruir al jurado nuevamente en relación con el delito que se imputaba al acusado; que la corte no dió al jurado oportunidad de deliberar nuevamente y les indicó el veredicto que debían traer, causando así perjuicio irreparable al acusado.

El procedimiento seguido por la corte sentenciadora se ajustó a las prescripciones de los artículos 288 y 289 del Código de Enjuiciamiento Criminal, que leen así:

"Art. 288.—Cuando ocurriere un veredicto de culpabilidad y el tribunal fuere de opinión que se ha equivocado el jurado en la aplicación de la ley, podrá explicar al jurado sus razones para sustentar dicha opinión, u ordenarle que vuelva a considerar el veredicto; y si después de esto diere el mismo veredicto, deberá hacerse constar en autos; pero en el caso de que el veredicto fuere absolutorio, no podrá el tribunal requerir al jurado para que lo vuelva a considerar.

"Si el jurado pronunciare un veredicto que no fuere ni general ni especial, podrá el tribunal ordenarle que lo considere nuevamente, y no se tomará razón de él, mientras no estuviere formulado en términos claros y precisos.

"Art. 289.—Si el jurado persistiere en dar un veredicto informal del cual, sin embargo, se pudiere claramente deducir que sea su intención pronunciarse a favor del acusado respecto del punto que se ventila, deberá hacerse constar en autos en los términos en que estuviere concebido, y el tribunal dictará fallo absolutorio. Pero no se podrá dictar fallo condenatorio sin que el jurado expresamente declare convicto al reo del delito imputádole."

Véanse: *People* v. *Jenkins,* 56 Cal. 4; *People* v. *Bonney,* 19 Cal. 426–446; *People* v. *Taylor,* 4 Cal. App. 31, 87 P. 215;

*Pueblo* v. *Alvarado,* 49 D.P.R. 423; y Abbott Criminal Trial Practice (1939 Ed.), págs. 1385–1390, párrafos 739, 740, 741.

Si la defensa creyó necesario que la corte instruyese de nuevo al jurado, debió pedir a la corte que así lo hiciera. Al no hacerlo renunció al derecho que pudiera tener.

Los dos últimos señalamientos se refieren a la alegada insuficiencia de la prueba y a la denegación de la moción de nuevo juicio.

Hemos leído detenidamente la transcripción de la evidencia y encontramos que la de cargo, habiendo sido creída por el jurado, es ampliamente suficiente para justificar el veredicto y la sentencia.

La moción para un nuevo juicio se basó en los mismos señalamientos de error que ya hemos discutido y desestimado. No erró, pues, la corte inferior al desestimar dicha moción.

*Debe confirmarse la sentencia recurrida.*