EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* QUINTÍN GARAY RESTO, acusado y apelante.

Núm. 12418.—*Sometido:* Noviembre 3, 1947. *Resuelto:* Diciembre 5, 1947.

870

*Benjamín y Álvaro Ortiz,* abogados del apelante; *Hon. Procurador General Luis Negrón Fernández, y J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Tódd, Jr., emitió la opinión del tribunal.

Quintín Garay Resto fué acusado ante la Corte de Distrito de Humacao de un delito de violación, convicto por un jurado y sentenciado por la corte a cumplir de ocho a quince años de presidio con trabajos forzados. Apeló el acusado y en este recurso alega que la corte inferior erró: (1) al permitir al testigo perito, Dr. Raúl Yumet, declarar que hubo violencia al ocurrir la penetración sexual; (2) al permitir la declaración de varios testigos de cargo cuyos nombres no aparecen al dorso de la acusación; (3) al permitir que el testigo Joaquín Mendoza declarase que el acusado no había dicho nada cuando el testigo le dijo "Dése por arrestado por violación"; (4) al permitir al testigo Otilio Encarnación decla-

rar sobre una conversación que tuvo con el acusado, y (5) al no permitir que el testigo, Juan Sánchez Caballero, declarase sobre manifestaciones que le hizo la perjudicada, Antonia Rivera Orozco.

■■ El primer señalamiento se basa en el hecho de haber declarado el perito médico, Dr. Yumet, que al examinar a la presunta perjudicada, al día siguiente de ocurridos los hechos, encontró que además de una laceración reciente del himen, "el hecho de que hubo desgarre del periné, demuestra que hubo violencia al consumarse el hecho."

Arguye el apelante que esta manifestación del perito invadió las funciones del jurado, que era el llamado a resolver si la presunta perjudicada fué violada por medio de la fuerza y de amenazas como se alegó en la acusación, o si el acto sexual se realizó voluntariamente, como alegó el acusado. No tiene razón el apelante. Esta manifestación del perito no debe considerarse aisladamente sino en relación con toda su declaración y de ella aparece que explicó en detalle el motivo de su conclusión al decir que según su opinión, cuando hay desgarre en el periné como consecuencia del acto sexual, es porque ha habido violencia; que cuando el acto es voluntario y siendo la mujer virgen, existe laceración del himen, pero nunca del periné.

Se trata de la declaración de un perito en la cual expuso una opinión no sólo como consecuencia del examen físico que realizó en la persona de la presunta perjudicada, sino también como resultado de su experiencia como médico. Tanto esa opinión, como la totalidad de la declaración, estaba sujeta, como la de cualquier otro testigo, a ser aceptada o no por el jurado, según la credibilidad que le mereciera, especialmente cuando otro perito médico presentado por el acusado expresó una opinión distinta. *Pueblo* v. *Sutton,* 17 D.P.R. 345; *Pueblo* v. *Bonelli,* 19 D.P.R. 69; *Pueblo* v. *Domes,* 56 D.P.R. 211.

La teoría expuesta por el apelante de que al admitir como prueba la opinión de un perito estaría éste invadiendo las

funciones del jurado, "usurping the function of the jury", ha sido criticada por los tratadistas y rechazada por los tribunales precisamente por el hecho primordial de que el jurado no está obligado a aceptar como cierta la opinión del perito. Véase 1 Greenleaf *on Evidence* 551; 7 Wigmore *on Evidence* 17, sec. 1920; *Grismore* v. *Consolidated Products*, 5 N.W.2d 646, (Iowa 1942); Anotación en 78 A. L. R. 755. Refiriéndose a dicha frase dice Wigmore:

"Con esta frase quiere hacerse implicar una impropiedad moral o una táctica injusta al expresar el testigo una opinión.

"En este aspecto la frase es tan engañosa, así como tan errónea, que debe ser enteramente repudiada. Es una mera pequeñez de retórica hueca. No existe razón alguna para la regla, porque el testigo al expresar su opinión no está tratando de 'usurpar' la función del jurado, ni podría si lo deseara. No está tratando de hacerlo, porque su error (si fuera uno) consiste meramente en ofrecer al jurado prueba que no debía recibir; y él no podría usurparla aunque quisiera, porque el jurado puede rechazar su opinión y aceptar cualquier otro punto de vista, y ningún poder legal, ni aún una orden del juez, podría obligarlo a aceptar la opinión del testigo en contra de la propia."

A nuestro juicio la declaración del Dr. Yumet era admisible y no invadió función alguna del jurado, quien tuvo la oportunidad de aceptarla o rechazarla al apreciar toda la prueba del caso. Este perito se concretó a expresar una opinión, la cual fué contradicha por otro perito, al efecto de que, al consumarse el hecho, es decir el acto sexual en sí, hubo violencia, pero no se refirió a la forma o manera en que el apelante actuó, es decir, si éste usó de la fuerza o de amenazas para vencer la resistencia de la perjudicada, antes de consumarse el delito imputado. La modalidad de éste, según la acusación, fué que el acusado, "por medio de la fuerza y amenazas de grave e inmediato daño corporal, acompañadas de la aparente aptitud para ejecutarlas, y contra la voluntad de ella y venciendo la resistencia que ésta opuso," tuvo contacto carnal con Antonia Rivera Orozco. El Dr.

Yumet, en su declaración, no se refirió a ninguno de estos particulares, sino que al "consumarse el hecho", hubo violencia.

La consumación de un hecho, en su acepción forense en el derecho penal, significa: "uno de los estados de los delitos que se realiza cuando el culpable ha ejecutado todos los actos para producir, como resultado, la infracción a la ley penal, en forma voluntaria y consciente." Diccionario de Derecho Usual de Guillermo Cabanellas. Y si de acuerdo con el artículo 257 del Código Penal, "Cualquiera penetración sexual, por leve que fuere, bastaría para consumar el delito," forzoso es concluir, que la frase usada por el perito, Dr. Yumet, al referirse a la forma en que, según su opinión, se consumó el hecho, no pudo perjudicar al apelante.

No se cometió el primer error señalado y tampoco el segundo, pues hemos resuelto repetidamente que el permitir que en el juicio declaren testigos cuyos nombres no figuran al dorso de la acusación, cae dentro de la discreción de la corte sentenciadora y que no intervendremos en apelación en ausencia de un abuso de dicha discreción. *Pueblo* v. *Kent,* 10 D.P.R. 343; *Pueblo* v. *Alméstica,* 18 D.P.R. 320; *Pueblo* v. *Dones,* 56 D.P.R. 211; *Pueblo* v. *Berenguer,* 59 D.P.R. 81 —y en el presente caso se demostró que el fiscal por moción radicada y notificada al abogado del acusado varios días antes del juicio solicitó se citara a los testigos cuyos nombres no constaban al dorso de la acusación.

El tercer señalamiento se refiere al hecho de haber admitido la corte que el policía que arrestó al acusado declarase que al decirle al acusado "Dése por arrestado por violación," el acusado no contestó nada. Sostiene el apelante que el permanecer callado cuando fué arrestado no constituye una admisión de su parte.

Asimismo arguye, en cuanto al cuarto señalamiento, que no constituye una admisión el haberle dicho en el cuartel el acusado al policía Otilio Encarnación, después de haber negado los hechos, que "Si la prueba es muy fuerte, mi señora

es tan buena conmigo que ella estaría dispuesta a divorciarse para yo casarme con la muchacha.''

Si bien en cuanto a estas palabras del testigo Encarnación no aparece del récord que el acusado las objetara o excepcionara su admisión, no tenemos duda de que eran admisibles, así como la frase señalada en el tercer error, ya que tanto las palabras constituían admisiones del acusado y su silencio al ser informado de que se le arrestaba por el delito de violación, también era admisible para que el jurado tomara en consideración su actitud al permanecer callado. No constituye el silencio de una persona al ser acusada de haber cometido un delito, prueba propiamente dicha, del delito en sí, el cual debe ser establecido por prueba directa o circunstancial, sino que más bien la declaración del testigo es admitida, como se dijo en el caso de *McCormick* v. *State,* 194 N.W. 347, 351 (Wis. 1923),'' . . . con el fin de permitir al jurado entender qué contestación el acusado debió haber hecho a tales imputaciones, y la conducta y contestación de una persona de ordinaria prudencia bajo las mismas o similares circunstancias.''

El último error señalado se refiere al hecho de no haber permitido la corte inferior que el testigo de la defensa, Juan Sánchez Caballero, declarase sobre manifestaciones que le hizo la perjudicada, Antonia Rivera Orozco.

La corte consideró que con la declaración de este testigo se trató de impugnar la declaración de la perjudicada en cuanto a que ella no quiso irse en el vehículo del testigo cuando éste se detuvo al lado de la guagua del acusado, en la cual, según la prueba de cargo ocurrieron los hechos. Aceptando, sin resolverlo, que se cometiera este error, somos de opinión que el mismo no fué perjudicial al acusado. La prueba de cargo, creída por el jurado, fué de tal naturaleza, que aun aceptando la declaración del testigo Sánchez, a nuestro juicio el jurado hubiera rendido el mismo veredicto.

*Debe confirmarse la sentencia apelada.*