Sotero León, recurrente, *v.* Comisión Industrial de Puerto Rico, Etc., demandada; Ramón Montaner, Administrador del Fondo del Estado, y Juan González Ortiz, obrero lesionado.

Núm. 222.—*Sometido:* Mayo 19, 1941. *Resuelto:* Junio 19, 1941.

*M. Guzmán Texidor,* abogado del recurrente; *Víctor J. Vidal González,* Asesor Legal del Fondo del Seguro del Estado, abogado del Administrador del Fondo; *José Soto Rivera,* abogado del obrero.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Sotero León, patrono no asegurado, acudió a esta corte en solicitud de que se revise y anule una resolución de la Comi-

sión Industrial dictada en febrero diez último, por virtud de la cual se acordó solicitar del Administrador del Fondo del Estado que trabara embargo en sus bienes en cantidad suficiente para cubrir la compensación del obrero Juan González Ortiz que fijó en mil cuatrocientos ochenta dólares.

Alegó que González Ortiz basándose en que en marzo 11, 1940, había sufrido un accidente del trabajo mientras guiaba una guagua del recurrente que chocó con un *truck*, sufriendo fuertes contusiones en el brazo izquierdo, se acogió al artículo 15 de la Ley de Compensaciones por Accidentes del Trabajo de 1935 ((1) pág. 251) y radicó ante la Comisión Industrial la correspondiente petición de compensación, y que señalada una vista ante los Comisionados León Parra y Herrero a ella comparecieron el obrero y el patrono y los comisionados dictaron la resolución cuya revisión se pide.

Sostiene que la revisión procede porque la resolución es contraria a derecho, 1, porque los comisionados actuaron sin jurisdicción; 2, porque erraron al no permitir que declarara el Policía Julio Torres; 3, porque actuaron en contra de la ley cohibiendo la libre declaración de sus testigos; 4, porque dejaron de resolver la cuestión de rehabilitación o posible rehabilitación del obrero planteada y probada por el patrono, y 5, porque la indemnización concedida no se ajusta a la ley.

Expedido el auto, se elevó el expediente original a esta corte, celebrándose la vista en mayo 19 último, compareciendo sólo el obrero por su abogado. El patrono recurrente había antes archivado un alegato en apoyo de su solicitud.

La falta de jurisdicción alegada se hace consistir en que la resolución de los comisionados ante quienes se vió el asunto no fué aprobada por la comisión. Se invoca la decisión de esta corte en *Santini* v. *Comisión Industrial*, 57 D.P.R. 412, en el sentido de que resuelve que un quórum puede entender en el caso, siempre que luego someta su decisión a la aprobación de la comisión en pleno.

No tiene razón el recurrente. Lo decidido por esta corte, tomado del resumen, fué:

"Los casos de patronos asegurados pueden verse indistintamente, a discreción de la Comisión Industrial, ante ésta o ante un Comisionado. Los de patronos no asegurados deben serlo exclusivamente ante la comisión como tal, constituída por sus tres comisionados o por un quorum."

¿Violó la comisión la ley al no permitir que declarara el Policía Torres? Veámoslo.

El caso fué llamado para vista en septiembre 25 de 1940. Comparecieron el obrero y el patrono en persona y por medio de sus abogados Soto y Guzmán, respectivamente. Ambos con sus testigos. De los ocho que llevó el patrono, declararon siete y se estipuló que el octavo declararía como los dos últimos. Entonces su abogado dijo: "Hemos terminado."

Se suscitó seguidamente la cuestión del examen pericial y tras una serie de manifestaciones ocurrió lo que sigue:

"Lic. Guzmán: Con la venia del Comisionado Sr. Herrero, yo voy a solicitar de Su Señoría que suspenda la admisión del informe del médico en este caso hasta que nosotros, hasta otro día que la comisión señale para que nuestro médico pueda confrontarse con el médico de la comisión.

"Lic. Soto: No hay inconveniente.

"Sr. Herrero: Entonces la vista se suspende hasta nuevo señalamiento en que comparecerá el médico que tenga a bien traer la representación del patrono y el Asesor Médico de la Comisión Industrial para determinar e informar en cuanto al grado de incapacidad que tiene el obrero Juan González."

Llamado de nuevo el caso en octubre 3, 1940, comparecieron el obrero y el patrono también en persona y por sus abogados. Pidió el patrono que se le permitiera presentar como testigo al Policía Torres y la comisión manifestó que aunque el caso había quedado abierto solamente para la prueba pericial, accedería en el ejercicio de su discreción. Instó el obrero la reconsideración de la regla alegando que

le era perjudicial. Surgió una larga discusión y finalmente la comisión la dejó sin efecto, con la protesta del patrono.

Como puede verse, se trata de una cuestión discrecional y aunque estamos inclinados a creer que la comisión hubiera actuado mejor sosteniendo su regla y en su consecuencia oyendo al testigo, no creemos que exista un abuso tal de discreción que justifique la anulación de la resolución final recurrida. La pregunta que formuláramos debe, pues, contestarse en la negativa.

■ El tercer motivo para pedir la revisión es la coacción que se dice ejercida por la comisión sobre los testigos del patrono. Hemos examinado el récord taquigráfico de las vistas que consta de noventa y seis páginas y no encontramos rastro alguno de coacción. Sólo se advierte el constante deseo de la comisión de llevar adelante con rapidez el procedimiento, sin dilaciones en preguntas inútiles o repetidas, pero sin intervenir en la libre expresión de los testigos. No hay mérito en el señalamiento de error.

■■ La cuestión de rehabilitación o posible rehabilitación del obrero quedó implícitamente resuelta por la comisión al decidir el caso en la forma en que lo hizo. Ella no venía obligada a creer la declaración del perito del patrono Doctor Vadi en el sentido de que sometido el obrero a la nueva operación que explicó, quedaría si no perfectamente bien, bastante mejorado, y pudo decidirse por lo manifestado por su propio perito el Dr. Boneta, a saber, que era imposible restablecer el control de la mano del obrero.

Quizá el avance de la ciencia permita hoy o permitirá algún día realizar con éxito la operación a que se refirió el Doctor Vadi, pero, bajo las circunstancias concurrentes, no creemos que podamos calificar como de manifiestamente errónea o abusiva la actitud asumida por la comisión frente al conflicto de opiniones periciales diferentes.

■■ El quinto y último motivo es el de que la indemnización concedida no se ajusta a la ley.

La comisión resolvió:

"...Como consecuencia del accidente, González recibió una seria lesión en el codo de su brazo izquierdo, que hizo preciso la amputación de una porción de hueso de dicho brazo por el codo, extirpándose también el codo, y quedándole al obrero como consecuencia este antebrazo completamente 'mongo', cual si fuera un antebrazo de goma que estuviera colgado a la parte superior del brazo por algún sustentáculo nada rígido; por consiguiente, el antebrazo éste se movía al impulso de su peso, sin sumisión alguna a la voluntad de su dueño. De más está decir que su mano estaba completamente inútil, sin movimiento de aprehensión alguna de sus dedos.

. . . . . . . . .

"El estado de incapacidad en que ha quedado el obrero, está comprendido en la tabla de Compensaciones por Accidentes del Trabajo, bajo la clasificación de 'pérdida de un brazo en o más arriba del codo.' Juan González Ortiz ganaba un semanal de $9.60; por consiguiente, de acuerdo con el provisto de la ley en su parte antes mencionada, le corresponde en derecho cobrar por concepto de compensación la suma de $1,480."

Y para sostener la existencia del error el recurrente invoca el siguiente párrafo del número 4 del artículo 3 de la Ley de Compensaciones por Accidentes del Trabajo, núm. 45 de 1935, págs. 251, 265:

"Se considerará incapacidad total la pérdida total y permanente de la visión industrial de ambos ojos; la pérdida de ambos pies por el tobillo o más arriba; la pérdida de ambas manos por la muñeca o más arriba, la pérdida de una mano y un pie, y las lesiones que tengan por consecuencia la incapacidad total y permanente del obrero o empleado para hacer toda clase de trabajos en ocupaciones remunerativas."

Creemos que constituye una buena y suficiente contestación, lo consignado en el alegato del obrero, a saber:

"Éste no es el caso del obrero Juan González Ortiz. Su incapacidad no es de la clase que la ley menciona como totalmente permanente, a la que se aplican las disposiciones anteriormente transcritas. Es de la clase de incapacidad parcial permanente, como muy bien resolvió la Hon. Comisión Industrial.....

"El apartado 3 del artículo 2 de la ley citada, refiriéndose a la incapacidad parcial permanente, lee como sigue:

" 'Se considerará incapacidad parcial permanente la pérdida de *un pie* o *pierna, una mano, un brazo, un ojo, uno o más dedos,* ya sea de los pies o de las manos y cualquiera anquilosis o fractura o dislocación donde haya habido roturas de ligamentos y donde la restauración no haya sido completa. Por las incapacidades parciales permanentes especificadas a continuación, el obrero o empleado lesionado, recibirá compensación adicional consistente en el 50 por ciento del jornal que percibía el día del accidente, o que hubiera de percibir a no ser por la ocurrencia del accidente, durante el número de semanas según. se fija en la tabla que se inserta a continuación; *Disponiéndose,* que en ningún caso se pagará al obrero, o empleado más de diez (10) dólares ni menos de uno y medio (1½) dólares por semana; *Y disponiéndose, además,* que en ningún caso se pagará una suma mayor de dos mil (2,000) dólares.' (Itálicas nuestras.)

"Tabla de Compensaciones.—*Brazos:* Por la pérdida de un brazo en o más arriba del codo_____durante 300 semanas_____

"Si el obrero ganaba $9.60 por semana, la mitad de su jornal equivale a $4.80, y si habiendo sufrido la pérdida de su brazo izquierdo por más arriba del codo, como se comprobó por la comisión, y la ley le concede compensación durante 300 semanas, un simple cálculo aritmético nos dice que el equivalente en dinero es de $1,440. El error existe, no como uno de derecho y sí como error en el cálculo de la indemnización, la que debe ser rebajada en la suma de $40, fijándola por tanto en $1,440.''

Termina el alegato que el recurrente presentara ante esta Corte Suprema, así:

"Último fundamento: el accidente sufrido por el obrero se debió al acto criminal de una tercera persona.

"Sólo citaremos la declaración del propio obrero tal como aparece del récord de este caso—pág. 4:

" 'Bueno viniendo de la carretera de Caguas para Río Piedras veníamos caminando para San Juan a buscar el periódico y en el trayecto de Caguas a Río Piedras nos cruzó un carro, un truck. El truck yo le puse el "dim" a la guagua porque era una guagua nueva y tenía mucha luz, el truck se me tiró encima y me rompió el brazo.' '' ·

La cuestión que este motivo envuelve no fué suscitada ante la comisión. Consistente con su conducta en el juicio, dijo

el patrono a la comisión en el último alegato que le presentara:

"La teoría del patrono en este caso es que el accidente no es uno compensable, porque al tiempo de sufrir dicho accidente, el obrero se encontraba en estado de embriaguez y que dicho estado fué la causa del accidente."

No ha lugar en tal virtud a discutir siquiera el nuevo fundamento.

De acuerdo con la ley nos está vedado entrar en la apreciación de la prueba de testigos sobre la embriaguez del obrero en el momento en que actuando como chófer ocurrió el accidente y como estudiados los errores de derecho alegados para pedir la revisión hemos resuelto que no existen, procedería anular el auto y devolver el expediente a la comisión. Sin embargo, como el mismo obrero reconoce en su alegato que hubo un error de $40 al calcularse la indemnización, la resolución recurrida deberá revisarse y la indemnización fijarse en $1,440. *Así modificada, quedará confirmada la resolución.*