ISABEL TYRELL e ISABEL SAURÍ, demandantes y apelantes, *v.* RAFAEL SAURÍ, demandado y apelado.

Núm. 10337.—*Sometido:* Febrero 1, 1951.  *Resuelto:* Marzo 30, 1951.

---

*Carlos E. Colón,* abogado de las apelantes; *Rafael Saurí, pro se.*

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Al revocar la sentencia dictada por la corte inferior declarándose sin jurisdicción en este caso—*Tyrell* v. *Saurí,* 71 D.P.R. 460—dijimos a la pág. 471: "No deseamos expresar opinión en cuanto a si la prueba en este caso es suficiente o no para que el demandado sea declarado pródigo. Ésa es misión que compete a la corte inferior en primera instancia. . . ."

Devuelto el caso procedió la corte inferior a resolverlo en sus méritos y por los fundamentos expuestos en una extensa opinión contentiva de conclusiones de hechos y de derecho, de nuevo declaró sin lugar la demanda. No conformes las demandantes apelaron y, como único error, señalan el a su juicio cometido por la corte sentenciadora al apreciar la prueba, habiéndolo hecho con "notable" pasión, prejuicio y parcialidad.

No se trata de un caso en que la corte dirimiera el conflicto existente en la prueba contradictoria presentada por las partes pues la única ofrecida fué la de las demandantes, ya que el caso se vió en rebeldía del demandado, sino de uno resuelto a base de insuficiencia en la prueba de las demandantes en cuanto a los requisitos mínimos exigidos para dejar establecida la prodigalidad. Correctamente la corte a quo

siguió las pautas sugeridas por la Sentencia del Tribunal Supremo de España de 25 de marzo de 1942, citada en *Tyrell v. Saurí*, supra, a las págs. 466–67, al efecto de que si bien a la prodigalidad debe darse un concepto amplio que permita incluir dentro de la misma toda la gama de los desórdenes económicos y todos los modos o formas de la disipación, siempre deben concurrir determinadas circunstancias que le marcan características esenciales, a saber:

" . . . . . . *a*) que se dé una conducta desordenada y ligera —no meramente desacertada—en la gestión o en el uso del propio patrimonio, bien a causa de un espíritu desordenado o por desarreglo de costumbres; *b*) *que esa conducta sea habitual, toda vez que los actos más o menos irregulares o los actos excesivos, pero aislados o puramente circunstanciales, no pueden ser calificados como constitutivos de la condición jurídica de prodigalidad; c*) que ponga injustificadamente en peligro la conservación del patrimonio, con perjuicio de aquellas personas a las que se reserva el ejercicio de la acción, unidas al pródigo por un vínculo estrechísimo de familia y con respecto a las cuales tiene éste obligaciones morales y jurídicas ineludibles." (Bastardillas nuestras.)

La demanda en este caso fué radicada el 10 de marzo de 1949 y en ella se alegaron, como actos de prodigalidad del demandado, los siguientes:

" . . . que debido a la edad y carácter del demandado éste *de un tiempo a esta fecha y en forma habitual* ha venido efectuando actos de prodigalidad con terceras personas no pertenecientes a su familia, *haciendo regalos gratuitos de considerables sumas de dinero y otros actos de prodigalidad malgastando caprichosamente sus bienes* con el consiguiente perjuicio para las demandantes como esposa e hija con carácter de única heredera forzosa respectivamente del demandado que son." (Bastardillas nuestras.)

Después de haber hecho un análisis de la prueba presentada por las demandantes la corte inferior llegó a la conclusión de que las únicas actuaciones del demandado que, en forma deficiente y por inferencia, podían considerarse pro-

badas fueron las siguientes: que el demandado tomó a préstamo en el mes de marzo de 1948 en el Banco Crédito y Ahorro Ponceño, en tres pagarés personales que se marcaron como préstamos para refacción de sus fincas, la suma total de $7,172.50, los cuales fueron pagados al banco en mayo 3 de 1948 con parte de una hipoteca de $50,000 con la cual gravó su casa residencia, habiéndose probado que para esa época, con el resto de dicha suma y el importe de una finca que le fué expropiada, se amortizaron otras deudas del demandado ascendentes a unos $200,000; que el 3 de marzo de 1948 María Luisa Antongiorgi compró en subasta pública una casa y solar en Ponce por $2,700 que pagó en efectivo y que dicho dinero le fué regalado por el demandado, quien llevaba relaciones extramaritales con ella; que asimismo en el mes de abril de 1948 el demandado le compró en la tienda "El Cometa" un juego de muebles a la Sra. Antongiorgi valorados en $600 y que ésta había separado otros por valor de $1,500 que no le fueron entregados al dar contraorden las demandantes en dicha tienda al recibir la factura por $600; que también se trató de probar que el demandado había ordenado al Dr. Munera el arreglo de la dentadura de la Sra. Antongiorgi y de otra persona por valor de $150, pero no se presentó la cuenta del doctor ni tampoco se probó que el demandado la pagara y la fecha en que dicho trabajo se realizara. Concluyó la corte, además, que no hubo prueba satisfactoria en cuanto al valor de las propiedades del demandado para poder determinar si las alegadas donaciones hechas por él podían o no afectar los derechos hereditarios de las demandantes—artículos 186 del Código Civil, ed. de 1930—pero tomando en consideración toda la prueba, estimó que su capital es mayor de $200,000 y podría ser de $500,000, siendo esta última cifra la mencionada, en forma dubitativa, por la demandante Isabel Saurí en su declaración. No consideró aceptable la fijación del valor de dicho capital en $75,000 que hizo el testigo Luis J. Nicole, esposo de la demandante Isabel Saurí y administrador y apoderado

del demandado, ya que si una sola propiedad—la casa residencia—había sido hipotecada en $50,000, no era lógico suponer que ésa y las demás fincas agrícolas del demandado no valieran más de $200,000, cuando el mismo yerno del demandado declaró que se habían hecho arreglos con el banco en cuanto a las deudas del demandado que ascendían a esa última suma.

A virtud de esos hechos la corte inferior consideró que no se había probado por las demandantes los requisitos o pautas a), b) y c) señalados por la Sentencia del Tribunal Supremo de España, supra, ya que no se había demostrado: (1) que la conducta del demandado había sido desordenada y ligera en la gestión o uso de su patrimonio; (2) que esa conducta hubiera sido habitual, ya que las actuaciones realizadas por él en relación con María Luisa Antongiorgi, aun aceptando que todas se hubieren probado, fueron puramente circunstanciales y aisladas y más bien irregulares; y (3) que no se demostró que los actos pródigos alegados pusieren injustificadamente en peligro la conservación de su patrimonio con perjuicio de las demandantes como herederas del demandado.

Del examen detenido que hemos hecho de la prueba presentada en este caso concluimos que no se ha cometido el único error señalado por las apelantes. Dicha prueba es insuficiente para dar cumplimiento a las pautas exigidas para dejar establecido un caso de prodigalidad.

■■ Arguyen las apelantes que de acuerdo con la declaración del Dr. Fernández Marina se demostró que el demandado padece de un estado hipomaníaco cuya característica es que él viene perdiendo progresivamente la habilidad de controlar sus impulsos primitivos, especialmente en la esfera sexual, y que esta enfermedad seguiría gradualmente haciéndole incompetente en el futuro en otros aspectos de su personalidad y que el demandado no estaba capacitado en absoluto para administrar en debida forma sus bienes. Así declaró, en efecto, el perito médico. Empero, la corte

no estaba obligada por dicha declaración (¹) a declarar pródigo al demandado, si la demás prueba sólo tendió a demostrar actuaciones aisladas del demandado, las cuales fueron calificadas por la corte a quo como el pago demasiado caro de caricias extramaritales, ya que no obstante la declaración del Dr. Fernández Marina las apelantes no ofrecieron prueba alguna directa y fehaciente de que el demandado, antes o después de los meses de marzo y abril de 1948, haya incurrido en despilfarro de su patrimonio en tal forma que su conducta pueda considerarse habitual. Más bien su conducta fué una de actos aislados, irregulares, inmorales quizás, pero puramente circunstanciales.

La Sentencia del Tribunal Supremo de España de 19 de junio de 1915, 133 Jurisprudencia Civil 729, (²) en un caso parecido al de autos pero mucho más fuerte, por su prueba, declaró sin lugar el recurso de casación interpuesto contra sentencia que a su vez desestimó una demanda sobre prodigalidad interpuesta por una esposa en contra de su esposo por haber éste hecho regalos de consideración, durante varios años, a una querida y dos hijas habidas con ésta, diciéndose a la pág. 740:

"Considerando que según tiene declarado esta Sala, no definiéndose por el Código Civil el concepto de prodigalidad, es forzoso reconocer que lo admite en el sentido usual y gramatical del vocablo, o sea de desperdicio y consumo de la propia hacienda en cosas vanas e inútiles, cuyo sentido coincide con el que ya le atribuyó la ley 5a, título 11, partida 5a; y esto sentado, para que una persona pueda merecer el calificativo de pródiga; y ser acreedora a que se le apliquen las limitaciones que en el ejercicio de su capacidad civil establecen los artículos 221 y siguientes del mencionado Código, *hay que entender como nota esencial característica, no a la mayor o menor moralidad o licitud de sus actos con relación a la administración y disposición de sus bienes* y para cuya impugnación en cada caso

(¹) *Pueblo* v. *Dones,* 56 D.P.R. 211; *Candelario* v. *Junta de Retiro,* 45 D.P.R. 430 y *León* v. *Comisión Industrial,* 58 D.P.R. 905.

(²) A esta Sentencia hizo referencia la del 25 de marzo de 1942, **supra,** y fué citada por la corte inferior.

concreto otorga la ley acción adecuada y eficaz, sino a la de haberlos ejecutado de una manera arbitraria y caprichosa, sin otro objeto ni finalidad que la irracional complacencia que pueda producir con el espíritu de quien lo ejecuta, la disipación y derroche de los referidos bienes, no obstante hallarse destinados a la satisfacción y cumplimiento de fines necesarios humanos y de fundarse en tal destino el derecho de propiedad sobre los mismos." (Bastardillas nuestras.)

No podemos aceptar tampoco la contención de las apelantes de que el juez de la corte inferior actuó con "notable" pasión, prejuicio y parcialidad al apreciar la prueba. Las repetidas alusiones que hace en sus conclusiones en cuanto a que los testigos habían declarado consistentemente a virtud de preguntas sugestivas y a insinuaciones de su abogado están plenamente demostradas en el récord. Es cierto que el caso se vió en rebeldía pero no era misión de la corte, como pretenden las apelantes, hacer objeción a las preguntas formuladas por su abogado. La referencia que se hace hacia el hecho de que no hubo prueba al efecto de que los bienes del demandado tuvieran un valor de $500,000, como erróneamente se alega-hizo constar la corte a quo, no es de por sí demostrativa de pasión, prejuicio o parcialidad. No dándole crédito a la valoración de $75,000 que les dió el Sr. Nicole, por los motivos que expuso, la corte se vió precisada a hacer inferencias, de acuerdo con toda la prueba, en cuanto a su valor. De todas maneras, ése era un hecho esencialísimo que correspondía a las apelantes probar pues según la importancia del patrimonio de una persona podrá o no considerarse que los donativos y gastos que haga afectan los derechos hereditarios que en dicho patrimonio puedan tener las personas autorizadas por el artículo 188 del Código Civil, ed. de 1930, a instituir la declaración de prodigalidad.

Al igual que en esta jurisdicción es doctrina establecida que debemos respetar las conclusiones de hechos de las cortes inferiores, basadas en la prueba presentada—

Regla 52 (*a*) de las de Enjuiciamiento Civil—en España prevalece igual doctrina y especialmente en estos casos sobre prodigalidad se ha resuelto que ". . . bien puede afirmarse que, para los efectos civiles, hoy se entiende por pródigo al desgastador o malgastador que consume su hacienda en cosas vanas, inútiles y superfluas, que no guardan proporción con los medios de que pueda contar para atender a las necesidades familiares al disipador o dilapidador de sus bienes, manirroto en frase vulgar; *mas como estos conceptos se presentan a tantas interpretaciones, según las circunstancias de cada caso, por la diversidad de hechos que suelen concurrir y elementos para formar juicio, y no hay ley positiva que determine y señale los que son suficientes para llegar a la restricción de la personalidad* por la declaración que autoriza al referido artículo 221 del Código Civil, se supone para resolver el recurso, *el recuerdo de las reglas de jurisprudencia que facultan a los Tribunales de instancia la apreciación de los elementos probatorios que les hayan suministrado las partes,* la cual ha de aceptarse en casación, *a menos que se demuestre de una manera clara y procesal la evidente equivocación o errores en que hubiere incurrido el fallo recurrido.*" (Bastardillas nuestras.) Sentencia de 30 de septiembre de 1930, 196 Jurisprudencia Civil 185, 194.

*Debe confirmarse la sentencia apelada.*