AUTORIDAD SOBRE HOGARES DE PUERTO RICO, demandante y apelada, *v.* MARÍA DEL CARMEN VIERA ECHEGARAY, y AMADEE, TEODORO y DEOGRACIAS VIERA ECHEGARAY, estos tres representados por su madre con patria potestad MARÍA ECHEGARAY VIUDA DE VIERA, demandados y apelantes.

Núm. 10160.—*Sometido:* Noviembre 6, 1950. *Resuelto:* Junio 29, 1951.

*Rafael Soltero Peralta,* abogado de los apelantes; *R. B. Pérez Mercado,* abogado de la apelada.

El Juez Asociado Señor Negrón Fernández emitió la opinión del tribunal.

La Autoridad Sobre Hogares de Puerto Rico, a los fines de desarrollar un proyecto de hogares de baja renta para personas de pocos ingresos, inició el presente pleito de expropiación forzosa contra María del Carmen Viera Echegaray y Amadée, Teodoro y Deogracias Viera Echegaray, representados estos tres últimos, menores de edad, por su madre con patria potestad María Echegaray viuda de Viera, para la adquisición de tres parcelas de terreno propiedad de los demandados, situadas en el barrio Hato Rey, de Río Piedras. La primera de estas parcelas tiene una cabida de 14.8399 cuerdas y se identifica en la demanda como parcela M–A. La segunda tiene una cabida de 25.9519 cuerdas y se identifica en la demanda como parcela M–B. La tercera tiene una cabida de 6.6994 cuerdas y se identifica como parcela M–C. En total, la cabida de la propiedad expropiada es de 47.4912 cuerdas.

La Autoridad demandante radicó Declaración sobre Adquisición y Entrega Material de la Propiedad y depositó en el tribunal inferior la suma de $50,000 como valor razonable de los terrenos objeto de la expropiación. El 14 de agosto de 1945 quedó investida con el título de propiedad sobre los mismos.

Los demandados, en su contestación, reclamaron que los terrenos expropiados tenían un valor de $255,000. El tribunal inferior, luego de un juicio laborioso que duró varios días y de llevar a cabo una inspección ocular de los terrenos, declaró con lugar la demanda de expropiación y condenó a la Autoridad demandante a pagar a los demandados la suma de $13,442.30 en adición a la de $50,000 depositada originalmente en el tribunal, más los intereses legales sobre dicha suma adicional desde el 14 de agosto de 1945 hasta su pago.

Los demandados establecieron recurso de apelación para ante este Tribunal y en su alegato sostienen que el tribunal inferior cometió error (1) al dar a los terrenos expropiados

una valoración que no está sostenida ni por la prueba de la demandante ni por la prueba de los demandados; (2) al negarse a admitir en evidencia ciertas escrituras de ventas de solares de una urbanización contigua—Urbanización Valencia—hechas durante los años 1945 a 1948; (3) al ignorar los precios de venta de fincas similares vendidas durante los años 1944 a 1947 en los alrededores de las parcelas M–A. y M–B expropiadas, no obstante haberse admitido en evidencia las escrituras correspondientes a tales ventas; (4) al ignorar el testimonio de los cuatro peritos de la parte demandada; y (5) al negarse a reconocer como justo valor de las parcelas M–A y M–B el de $249,000, según quedó establecido por la prueba documental y testifical de los demandados.

Al fijar el valor de las tres parcelas expropiadas en la cantidad de $63,442.30 el tribunal inferior distribuyó dicha suma en la siguiente forma: Por la parcela M–A, de 14.8399 cuerdas, $28,195.81; por la parcela M–B, de 25.9519 cuerdas, $28,547.09; y por la parcela M–C, de 6.6994 cuerdas, $6,699.40.

La presente apelación se contrae a la valoración de las parcelas M–A y M–B, pues en cuanto a la parcela M–C los apelantes aceptan como correcta la determinación hecha por el tribunal inferior.

■■ Argumentando su primer señalamiento de error sostienen los apelantes que el juez sentenciador, al fijar el valor de las parcelas M–A y M–B en $1,900 y $1,100 por cuerda, respectivamente, descartó la tasación del único perito de la Autoridad demandante, W. W. Rank, así como la tasación de los cuatro peritos de los demandados, J. M. Canals, Charles Llenza, José E. Salgado e Ismael Flores Lugo, y que, por lo tanto, la conclusión a que llegó dicho tribunal no está sostenida por la prueba. No estamos conformes. El tribunal no estaba obligado a seguir indefectiblemente la opinión de los peritos de una u otra parte, *El Pueblo* v. *Sutton*, 17 D.P.R. 345; *El Pueblo* v. *Bonelli*, 19 D.P.R. 69;

*León* v. *Comisión Industrial*, 58 D.P.R. 905; *Pueblo* v. *Dones*, 56 D.P.R. 211, y por ende a fijar la compensación por la propiedad expropiada en una suma igual a la que indicaran unos u otros. La función judicial de determinar una justa compensación por la propiedad expropiada no está limitada por el criterio de unos u otros peritos. *Phillips* v. *United States*, 148 F.2d 714 (C.C.A. 2, 1945); *United States* v. *2.4 Acres of Land, More or Less, Etc.*, 138 F.2d 295 (C.C.A. 7, 1943); *Burnett* v. *Central Nebraska Public Power & Irr. Dist.*, 125 F.2d 836 (C.C.A. 8, 1942). Un tribunal debe llegar a la justa valoración de los bienes objeto de expropiación considerando aquel testimonio que a su juicio le merezca crédito y esté basado en factores propios a ser considerados en la valoración que deba darse a la propiedad, así como cualquier otra prueba apropiada bajo las reglas sancionadas para ello. No puede sostenerse que si la determinación judicial no corresponde a la tasación hecha por los peritos de una u otra parte, la misma no está sostenida por la prueba porque no corresponda a una u otra tasación.

En el caso de autos, el valor dado por el tribunal a los bienes expropiados está dentro de los estimados hechos por los peritos, aproximándose más a la del perito de la demandante. El propio juez tuvo la oportunidad de hacer sus observaciones sobre el terreno, al verificar una inspección ocular. No creemos que exista el primer error señalado.

Tampoco el segundo, por el que se atribuye al tribunal inferior error al no admitir en evidencia copias certificadas de escrituras de ventas de solares en la Urbanización Valencia, en Hato Rey, cercanos a los terrenos expropiados. El valor en el mercado de bienes expropiados puede establecerse mediante evidencia de venta de otras propiedades si éstas son similares a los bienes expropiados y su venta es contemporánea. *Pueblo* v. *Huyke*, 70 D.P.R. 754. Las escrituras de ventas que fueron ofrecidas y rechazadas y a que se refiere este segundo señalamiento de error se referían a ventas de solares en la Urbanización Valencia de Hato

Rey, que si bien colindaba con las parcelas expropiadas era una urbanización en pleno desarrollo, con calles, alcantarillado, instalaciones de agua y alumbrado público, mientras que las parcelas expropiadas eran fincas rústicas de considerable extensión. No obstante ser cierto que el valor de la propiedad en el mercado no debe determinarse por el uso a que ha estado dedicado como único factor, sino que también debe considerarse el uso más beneficioso a que la propiedad sea adaptable en un futuro próximo razonable, *Pueblo* v. *Sucn. Rabell,* ante, pág. 574, y casos allí citados, las ventas de solares de la Urbanización Valencia no podían considerarse como venta de propiedades similares, pues al igual que en el caso de *Pueblo* v. *Huyke,* supra, aquí precisa considerar que no son solares sino una parcela de terreno lo que se ha expropiado. *Cf. Pueblo* v. *Carmona,* 70 D.P.R. 312; *Autoridad Sobre Hogares* v. *Sagastivelza,* ante, pág. 276.

■ Por el tercer señalamiento se atribuye error al tribunal sentenciador al ignorar los precios de venta de fincas similares a las parcelas M–A y M–B. Las ventas específicas son las siguientes: (1) parcela de una cuerda vendida el 30 de diciembre de 1944 por $8,000 (vendida esa misma parcela el 14 de abril de 1947 por la misma suma de $8,000 y el 7 de julio de 1947 por $18,000); (2) parcela de 2,995 metros cuadrados hecha el 11 de julio de 1947 por la suma de $11,983.95 y (3) parcela de una cuerda vendida el 24 de mayo de 1948 por el precio de $20,000.

La cabida de cada una de las referidas parcelas no guarda proporción con la de las parcelas expropiadas y su descripción y localización, según aparece del récord ante nos, indican que están en una zona en proceso de desarrollo urbano, próximas a la carretera Carpenter, una de ellas próxima al Hipódromo Quintana. No podemos, por tanto, convenir con los apelantes en que se trata de ventas similares.

■ Por el cuarto señalamiento se imputa error al tribunal inferior al ignorar el testimonio de los peritos de los

demandados. Ya dijimos anteriormente que el juez sentenciador no estaba obligado a descansar en el testimonio de los peritos de ninguna de las partes. Evidentemente los de los demandados no fueron suficientemente persuasivos—en vista de los factores considerados para formular sus conclusiones—para llevar al ánimo del tribunal la convicción de que sus tasaciones eran correctas y adecuadas. Ellos formaron juicio teniendo presente el precio de los solares en las urbanizaciones cercanas a las tierras expropiadas, y haciendo cálculos en cuanto a lo que podrían producir dichos terrenos luego de sometidos al proceso de urbanización, descontando los costos de ésta y estimando un margen de ganancia a base de los posibles precios de venta de los solares. Para poner de relieve ese extremo en cuanto al procedimiento de valoración seguido por los peritos de los apelantes, que no se ajusta a la doctrina establecida por este Tribunal en *Pueblo* v. *Huyke*, supra, veamos las siguientes conclusiones de los peritos Salgado, Llenza y Canals, luego de haber declarado en cuanto al valor que a su juicio tenían los terrenos expropiados:

José E. Salgado, a respuesta del abogado de la demandante, estableció el procedimiento seguido para su valoración de esta manera:

"P. ¿El valor que usted atribuye a esa tierra usted se lo atribuye a base de lo que usted calcula que costaría urbanizar y lo que valdrían los solares una vez urbanizados?

R. Sí, señor.

P. ¿A base de eso usted está atribuyéndole a esa tierra precio por metro cuadrado?

R. Está vendiendo metros cuadrados y sacando el costo de urbanizar de metros cuadrados."

Charles Llenza en igual forma declaró:

"P. ¿De suerte que usted le atribuye a esas tierras un valor de ocho mil dólares, o sea, dos dólares el metro cuadrado, y considerando que esos dos dólares sumados a los $2.25 de la construcción de la urbanización representarían un costo ori-

ginal de $4.25 ó $4.50 por metro cuadrado? ¿Entonces usted deduce la ganancia que usted podría obtener, considerando el precio de solares cuando estuviere hecha la urbanización?

R. Exactamente.

P. ¿En otras palabras, que usted le está atribuyendo antes de urbanizarla el valor que recibiría entre el costo de la construcción y la venta de los solares una vez urbanizados?

R. Sí, señor."

J. M. Canals lo estableció de la siguiente manera:

"P. ¿Puede decirle al tribunal qué factores ha tomado usted en consideración para llegar a la tasación que ha hecho en cada una de las parcelas a que usted se ha referido?

R. Yo estudié el terreno y traté de determinar el mejor uso posible de los terrenos habiendo llegado a la conclusión de que desde el año 1941 para acá el mejor uso de ese terreno es el de una urbanización y por lo tanto, tomé en cuenta las ventas de solares que había efectuado en urbanizaciones similares y calculando el costo de la urbanización lo que costaría hacer la urbanización, los metros que hubiera que ceder para calles, calculé el resto de los metros a base de los precios obtenidos en las urbanizaciones cercanas, después dividí por el total de cuerdas y saqué los $8,000, para la que colinda con la Urbanización Valencia. El mismo procedimiento pero concediéndole el tiempo necesario para el desarrollo del proyecto utilicé para determinar el precio de las otras veintiséis cuerdas."

Es evidente que el juez sentenciador no podía apoyarse en los testimonios de estos peritos.

El quinto señalamiento es el que imputa error al tribunal inferior al negarse a reconocer como justo valor de las parcelas M–A y M–B la cantidad de $249,000. Esta cantidad corresponde a la tasación de los peritos de los demandados. Ya hemos visto cómo fundamentalmente dicha tasación no podía ser considerada por el juez sentenciador como base apropiada para su determinación. Por otro lado, cuando se inició el procedimiento de expropiación, las parcelas M–A y M–B eran tierras de pasto. La parcela M–A está contigua a la Urbanización Valencia, pero no tenía salida por dicha urbanización a menos que fuera a pie, a

caballo o en coche. Aun a la fecha de la inspección ocular verificada por el juez inferior el 29 de octubre de 1948 se hizo constar que los terrenos expropiados "no están conectados a la Urbanización Valencia ni a la carretera Carpenter por medio de comunicación alguna." De 12 a 13 cuerdas de la parcela M–B eran terrenos bajos y húmedos, cerca del mismo nivel del agua de la laguna San José. La parte baja de esa parcela se inundaba en tiempo de creciente al derramarse las aguas de una quebrada. La misma carecía, a la fecha de su expropiación, de comunicación adecuada para su desarrollo urbano. Según el propio perito Canals de los demandados, para conectar la parcela M–A con la parcela M–B, en caso de urbanizarlas, era necesario adquirir terrenos de uno de los colindantes, pues la salida de la parcela M–B era inadecuada, consistiendo de una servidumbre por sobre las distintas parcelas y tierras colindantes. La parcela M–B estaba más distante de las áreas urbanizadas que la M–A. No obstante esto, el tribunal inferior, al fijar la compensación por cada una de dichas parcelas, tuvo presente las probabilidades de cada una de ellas para fines de urbanización. Refiriéndose a la parcela M–A y fijar su valor en $1,900 la cuerda, hizo constar: "Esta parcela es la única que realmente podría tener posibilidades de urbanizarse en un futuro cercano." Y refiriéndose a la parcela M–B y fijar su valor en $1,100 la cuerda, dijo: "Las posibilidades de urbanizar esta parcela son remotas por su configuración, ya que es una faja estrecha, larga e irregular tanto en sus contornos como en su topografía."

No estamos convencidos, después de un detenido estudio del voluminoso récord ante nos, que el tribunal inferior cometiera ninguno de los errores señalados. Más bien, mostrando un alto sentido de justicia, luego de dar a las partes amplia oportunidad para presentar sus pruebas, llegó a la valoración que consideró apropiada bajo las circunstancias del caso y dió crédito a aquella prueba que consideró persuasiva para ayudarle a hacer una correcta deter-

minación. Los propios demandados se situaron fuera de las posibilidades de persuasión al sostener tasaciones excesivas y considerar factores inciertos e indeterminados en su valoración de los terrenos. En la prueba de la demandante y en sus propias observaciones encontró base adecuada el juez sentenciador para llegar a sus conclusiones.

*La sentencia será confirmada.*