EL ESTADO LIBRE ASOCIADO DE PUERTO RICO, representado por EL GOBERNADOR DE PUERTO RICO, demandante, apelante y apelado, *v.* OSCAR F. BRAVO y BANCO CRÉDITO Y AHORRO PONCEÑO, demandados y apelado-apelante el primero.

Número 11515.

*Sometido:* 11 de junio de 1956. *Resuelto:* 13 de diciembre de 1956.

*Hon. Secretario de Justicia José Trías Monge, V. M. Sánchez Fernández* y *Jesús Zequeira, Procuradores Auxiliares,* abogados del demandante, apelante y apelado; *A. Ramírez Silva,* abogado del demandado, apelado y apelante.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

A requerimiento de la Compañía de Fomento Industrial de Puerto Rico y para uso y beneficio de ésta, el Estado Libre Asociado de Puerto Rico instó acción para apropiar una parcela de 5.017 cuerdas de terreno, sita en el barrio Sábalos

del Municipio de Mayagüez. [1]   Esta parcela se segregaba de una finca principal compuesta de 7.808 cuerdas de terreno, propiedad de Oscar F. Bravo, [2] quedando como remanente dos fajas de terreno separadas entre sí, una al este y la otra al oeste de la parcela segregada.   Como compensación justa y razonable por la parcela expropiada, el demandante depositó en el tribunal la suma de $8,779.75 y quedó, mediante resolución al efecto, investido con título de dominio sobre dicha parcela.

En su contestación el demandado Sr. Bravo negó que la justa compensación por la parcela expropiada fuera la cantidad depositada por el demandante y reclamó en su lugar la suma de $19,717.27 más $5,000 en concepto de daños (severance damages) y más tarde enmendó su contestación para reclamar las cantidades de $30,102.00 y $9,780 respectivamente, por los indicados conceptos.

Después de un juicio y de practicarse una inspección ocular, el tribunal a quo dictó sentencia decretando que la suma de $15,051 constituía la justa compensación a que tenía derecho el demandado por la parcela expropiada y ordenó al demandante depositar la diferencia entre dicha cantidad y la que había ya depositado, más los intereses al tipo legal. Al dictar esta sentencia el tribunal a quo se basó en que (1) el valor razonable en el mercado de la parcela expropiada a la fecha de la expropiación era de $15,051 y (2) el demandado no tiene derecho a recibir suma alguna por concepto de daños por segregación (severance damages).

■ Ambas partes apelaron.   El demandado señala la comisión de tres errores, en el primero de los cuales ataca el

---

(1) La acción de expropiación se instó a tenor con las disposiciones de la Ley núm. 188 de 11 de mayo de 1942 enmendada por la Ley núm. 99 de 18 de abril de 1952, el Plan de Reorganización núm. 10 de 1950 aprobado por la Legislatura de Puerto Rico, la Ley núm. 377 de 8 de mayo de 1951 y la Ley General de Expropiación Forzosa de 12 de mayo de 1903 según ha sido enmendada.

(2) El Banco Crédito y Ahorro Ponceño fué eliminado como parte demandada por carecer de interés en el pleito.

pronunciamiento del tribunal a quo negándole compensación por los daños por segregación. (³)

Creemos que este primer error fué cometido. La finca principal de la cual se segregó la parcela expropiada queda al sur de la ciudad de Mayagüez y colinda por el norte con la carretera insular número 2 que de aquella ciudad conduce a San Germán y está a 450 metros de la zona urbana después del poblado conocido por "Cuesta de las Piedras", que es un desarrollo radial formado por casas de bajo costo. Entre este poblado y la parcela expropiada hay unos 300 metros de distancia y a otros 200 metros al oeste de dicha parcela queda el poblado "Sábalos" que también está formado por casas de bajo costo. El tribunal a quo concluyó que "[e]l mejor uso a que podía adaptarse la parcela expropiada (junto con el remanente que quedó de la finca principal) era para el desarrollo de una urbanización residencial para personas de ingresos medianos". Y en cuanto al efecto de la segregación concluyó: "La parcela expropiada se segregó del centro de la finca principal, quedando como remanente una faja de 30 metros de frente al este y otra faja de 40 metros de frente al oeste. Al quedar dividido en esa forma, el remanente perdió la flexibilidad necesaria para dedicarlo al mejor uso de que era susceptible la finca principal, lo cual no hubiera ocurrido de haberse segregado la parcela expropiada de uno de los extremos de aquélla. Pero la parcela expropiada fué segregada del centro porque el Sr. Waldemar Bravo, administrador de los bienes del demandado, solicitó que al procederse a la expropiación se dejara una faja de 30 metros en el lado este de la finca principal, sitio por donde ésta colindaba con un establecimiento industrial del propio señor Bravo. Siendo así, consideramos que

---

(³) El demandante-apelado y apelante no ha contes'ado los errores señalados y discutidos por el demandado-apelante y apelado sino que se ha limitado a señalar y discutir, en apoyo de su recurso de apelación, la comisión de dos errores.

el demandado está impedido ahora de reclamar daños por segregación." [4]    (T.A. págs. 21 y 22, Primera Pieza.)

El tribunal a quo se equivocó al considerar que los actos del administrador de los bienes del demandado impedían a éste reclamar daños por desmembración *(severance damages)*.

Lo único que surge de la prueba, en cuanto a las facultades del Sr. Waldemar Bravo, es que éste era un co-administrador de los bienes del demandado, su padre el señor Oscar F. Bravo, y que además poseía como arrendatario la finca expropiada.    No se ha establecido pues que Waldemar tuviera otros poderes, facultades o autoridad para obligar al demandado, que no fueran los que generalmente tenga un

---

[4] Esta conclusión del tribunal sentenciador está basada en el testimonio del ingeniero Samuel Díaz Irizarry, quien declaró textualmente:

"R—Cuando la Compañía de Fomento decidió adquirir esa parcela para uso industrial, me encomendó a mí ponerme en contacto con los dueños de la parcela para empezar los estudios del terreno y la adquisición.

"

"R—Originalmente me puse en contacto con el señor Waldemar Bravo para informarle de los propósitos de la Compañía de Fomento, solicitándole permiso para proceder con los estudios del terreno y fijar los límites de la parcela que la Compañía de Fomento interesaba.

"

"R—Nosotros tenemos que fijar las colindancias de las parcelas que vamos a coger.    Siempre nos ponemos en contacto con el dueño para ver su punto de vista.    Eso hicimos en este caso y el señor Bravo nos indicó la conveniencia de que retiráramos la colindancia noreste como treinta o cuarenta metros del edificio existente allí, uno que sirve de garage y establecimiento comercial.    Procedimos a fijar en treinta metros la distancia de la colindancia de la parcela de nosotros y así se lo comunicamos al señor Bravo, indicándonos él que no tenía objeción en eso."    (T.E. 164–165.) En la repregunta declaró:

"P—Al usted referirse al señor Bravo, ¿se refiere al señor Waldemar Bravo, que está aquí presente?

"R—Sí, señor.

"

"P—De manera, que la conformación dada a la parcela expropiada, cuyo trazado hizo usted, la hizo en esa forma, a solicitud del señor Bravo.

"R—De mutuo acuerdo

"

"R—En este proyecto nosotros podíamos haber cogido hasta el edificio existente y no nos afectaba.    Nos retiramos solamente esa distancia allí, debido a la solicitud del señor Waldemar Bravo."    (T.E. 165, 166.)

administrador o un arrendatario. Y aquí, ciertamente, lo que el tribunal a quo atribuye a Waldemar, no es ni un acto de administración, ni una facultad que corresponda a un arrendatario para obligar al arrendador.

Cuando Waldemar solicitó, según las conclusiones del tribunal a quo, que al procederse a la expropiación se dejara una faja de 30 metros de terreno al lado este de la finca principal, decidió por cuenta propia, que la parcela expropiada se segregara del centro de dicha finca principal, resultando como consecuencia, una disminución en el valor del remanente. A falta de autorización expresa Waldemar no podía obligar legalmente al dueño de la finca, transigiendo los derechos que a favor de éste dimanan del dominio. (⁵) La prueba no demuestra que Waldemar estuviera investido de tal facultad. Aun en los casos en que una persona actúa como apoderado de otra, necesita mandato expreso para transigir, enajenar, hipotecar o ejecutar cualquier otro acto de riguroso dominio, pues el mandato concebido en términos generales, no comprende más que los actos de administración. Art. 1604 del Código Civil (ed. 1930)—31 L.P.R.A. sec. 4425.

En su consecuencia, el dueño no estaba impedido, como resolvió el tribunal a quo, de reclamar los daños por desmembración *(severance damages)*.

■■ La regla para determinar la medida de los daños por desmembración *(severance damages)* como consecuencia de la expropiación de parte de una finca, ha sido ya establecida por las decisiones de este Tribunal, como la diferencia entre el valor razonable en el mercado de toda la propiedad como unidad antes de la expropiación y el valor razonable en el mercado de la parte que queda después. *Pueblo* v. *García*, 66 D.P.R. 504; *Pueblo* v. *Anadón*, 69 D.P.R. 822; *Pueblo* v. *Soc. Agric. Mario Mercado e Hijos*, 72 D.P.R. 792.

---

(⁵) Decimos esto porque según resolvió el tribunal sentenciador, la actuación de Waldemar, impide al dueño de la finca reclamar los daños por segregación, lo que equivale a una renuncia de parte del valor de las parcelas remanentes.

También dijimos en este último caso que la existencia de tales daños deberá ser demostrada por el dueño con prueba afirmativa.

En el récord hay prueba sobre tales daños pero el tribunal a quo deberá formular las conclusiones de hecho correspondientes y fijar a base de ellas, los indicados daños. Esto requiere que se revoque la sentencia apelada y se devuelva el caso para ulteriores procedimientos.

■ En el segundo señalamiento se atribuye error al tribunal sentenciador "al no admitir en evidencia prueba de ventas contemporáneas de terrenos similares y en la alternativa, siendo la teoría del demandado la dificultad y escasez que hay en Mayagüez para conseguir solares propios para ser urbanizables, lo que motiva un alza en los valores de tales terrenos, dicho tribunal cometió error al no admitir dicha prueba a estos fines."

Hemos examinado la evidencia rechazada y no podemos convenir con el demandado-apelante en que el error apuntado fuera cometido. Estas ventas eran de solares ubicados en la zona urbana o en la zona industrial de la ciudad de Mayagüez. La parcela expropiada queda, como hemos visto, fuera de esa área. Véase *Autoridad Sobre Hogares* v. *Viera*, 72 D.P.R. 732; *Cf. El Estado Libre Asociado de Puerto Rico, etc.* v. *The Ocean Park Development Corp.*, ante, pág. 158, (1956).

■ Tampoco nos impresiona el argumento de que fué error no darle valor probatorio al exhibit C del demandado-apelante admitido en evidencia. En sus conclusiones el tribunal sentenciador consideró y analizó dicha prueba y llegó a la conclusión de que debido a la disimilitud entre la parcela expropiada y la evidenciada por el referido exhibit X, no podía considerarla para fijar el valor en el mercado de la parcela expropiada. En ello no cometió error. El caso de *The Ocean Park Development Corp. et al.*, supra, donde

consideramos una cuestión similar, es distinguible. Allí resolvimos, después de hacer un análisis de la prueba admitida, que ésta no carecía de valor probatorio según erróneamente resolvió el tribunal sentenciador. Tampoco se cometió error al no admitir la evidencia ya mencionada, a los fines de demostrar el alza en valor de terrenos propios para ser urbanizables debido a la escasez de los mismos. El tribunal a quo concluyó que Mayagüez "carece de terrenos para su expansión urbana" e indiscutiblemente tomó en consideración este hecho para fijar el valor en el mercado de la parcela expropiada. (⁶)

■■ El tercer señalamiento, que es al efecto de que el tribunal sentenciador apreció erróneamente la prueba, carece de mérito. Dicho tribunal tuvo ante sí suficiente evidencia para llegar a una conclusión en cuanto al valor razonable en el mercado de la parcela expropiada. Oyó el testimonio de los peritos de una y otra parte, consideró alguna prueba documental y otra de carácter testifical y además el juez sentenciador tuvo oportunidad de hacer sus propias observaciones al verificar una inspección ocular. En ocasiones anteriores hemos dicho que el tribunal no está obligado a seguir indefectiblemente la opinión de los peritos de una u otra parte. *Autoridad Sobre Hogares* v. *Viera,* supra; *Pueblo* v. *Soc. Agríc. Mario Mercado e Hijos,* supra, a la pág. 815. En este caso la cantidad que el Tribunal determinó como justa compensación, con excepción de los daños por desmembración *(severance damages),* que denegó, está

---

(⁶) En su conclusión de hecho número 10, el tribunal a quo se expresa así:

".    .    .    .    .    .    .

"El perito del Estado no tomó en consideración la gran escasez que hay en Mayagüez de terrenos económicamente urbanizables.

".    .    .    .    .    .    .

"No hay duda que la finca no tendría ese valor si en Mayagüez hubiera más terreno disponible para su desarrollo urbano. Es este factor de escasez, no tenido en cuenta por el perito del Estado, el que incrementaba el valor de la finca frente a la demanda efectiva relativamente limitada."

dentro de los límites establecidos por los peritos en sus declaraciones. *Autoridad Sobre Hogares* v. *Viera*, supra; *Pueblo* v. *Soc. Agríc. Mario Mercado e Hijos*, supra; *Iriarte* v. *United States*, 157 F.2d 105; *Love* v. *United States*, 141 F.2d 981. Habiendo en los autos prueba suficiente para sostener la conclusión del tribunal a quo sobre el valor justo y razonable en el mercado de la parcela expropiada, debemos respetarla. *Autoridad Sobre Hogares* v. *Colón*, 73 D.P.R. 215 y casos en éste citados a la pág. 221.

Pasemos ahora a considerar el recurso interpuesto por el demandante-apelado y apelante. Este apunta la comisión de dos errores. En el primero alega que la sentencia apelada está basada en conclusiones de hecho contradictorias y en el segundo ataca la valoración dada a la parcela expropiada arguyendo que el tribunal a quo apreció erróneamente la prueba.

El primer señalamiento se funda en que mientras en la conclusión de hecho número 4 el tribunal sentenciador sostiene que "Mayagüez ha tenido una actividad bastante limitada en el mercado de la propiedad real para fines residenciales", en otra conclusión dicho tribunal sostiene que la escasez de terrenos disponibles para su desarrollo urbano "incrementa el valor de la finca frente a la demanda efectiva relativamente limitada". De esas propias conclusiones se infiere que al fijar el valor razonable en el mercado de la parcela expropiada, el tribunal a quo tuvo en cuenta la demanda relativamente limitada de solares para fines residenciales. No existe pues la aparente contradicción. Por otro lado, este primer señalamiento, lo mismo que el segundo, van encaminados a atacar la apreciación de la prueba que tuvo ante sí el tribunal sentenciador para tasar la parcela expropiada. En cuanto a esto, descansamos en lo que ya dijimos al discutir el tercer señalamiento de error apuntado por el demandado-apelante y apelado en su recurso. Sin que nada tengamos que agregar a lo que allí dijimos,

concluímos que los errores señalados por el demandante-apelante y apelado no fueron cometidos.

*En su virtud la sentencia apelada será revocada y el caso devuelto para ulteriores procedimientos compatibles con los términos de esta opinión.*

El Juez Asociado Sr. Sifre no intervino.