TEXTO COMPLETO DE LA RESOLUCIÓN
La peticionaria, Autoridad de Carreteras y Transportación de Puerto Rico (en adelante, ACT), nos solicita que revoquemos las dos órdenes emitidas el 2 de octubre de 2006 por el Tribunal de Primera Listancia, Sala de San Juan Mediante las mismas, dicho foro declaró no ha lugar la Solicitud de Reconsideración y la Moción en Solicitud de Orden presentadas por la ACT el 26 y 27 de septiembre de 2006, respectivamente, en las cuales ésta solicitó una enmienda a la petición de expropiación y la celebración de una vista para discutir los aspectos relacionados a la solicitud de enmienda.
Conjuntamente, la ACT presentó Moción en Auxilio de Jurisdicción, solicitando que ordenemos la paralización de los procedimientos ante el Tribunal de Primera Instancia hasta tanto se resuelva este recurso.
Por los fundamentos que expondremos, se deniega la expedición del auto solicitado y declara no ha lugar la moción en auxilio de jurisdicción.
I
Surge de autos que para mayo de 1998, la ACT presentó dos peticiones de expropiación forzosa ante el Tribunal de Primera Instancia (en adelante, TPI) para adquirir varios predios de terreno, sitos en el Barrio San *645 Antón del Municipio de Carolina. El motivo de las expropiaciones era utilizar dichos terrenos para el Proyecto AC-006600, Ruta 66 Expreso Noreste, Carolina-Canóvanas. La ACT incluyó con la petición la descripción de los terrenos afectados y consignó las sumas que a su juicio correspondían a la justa compensación para la adquisición de las mismas. Asimismo, indicó las personas que, según su mejor información y creencia, tenían derecho a la compensación depositada como dueños o posibles reclamantes de algún interés en los referidos terrenos.
Luego de varios incidentes procesales, el 13 de noviembre de 2002, las partes sometieron un documento de Estipulación Transaccional en cada caso (KEF1998-0410 y K EF1998-0411). Mediante los mismos, las partes se pusieron de acuerdo sobre todos los asuntos en controversia; entre éstos, acordaron la cuantía de la justa compensación; y además, la ACT se comprometió a construir una atarjea de 10.95 metros de ancho y cuatro metros de aceras, en un plazo aproximado de diez meses. Ello obedeció a que el remanente de las fincas expropiadas quedó enclavado. El acuerdo específico quedó recogido en las cláusulas 3 a 7, inclusives, de ambos documentos transaccionales, las cuales transcribimos a continuación:

3.Las partes convienen, además, que la Autoridad de Carreteras se compromete a construir una atarjea de diez punto noventa y cinco (10.95) metros de ancho, más cuatro (4) metros de aceras. Igualmente, la Autoridad de Carreteras mejorará el camino existente desde el remanente de las parcelas expropiadas hasta la mencionada atarjea. Con dichas mejoras, los remanentes de la parte con interés tendrán acceso a una marginal ya construida, la que a su vez le proveerá acceso a la Avenida 65 de Infantería.

4. La construcción aludida en el párrafo anterior demorará aproximadamente diez (10) meses, mientras tanto la parte con interés podrá continuar teniendo acceso por el camino existente.

5. La peticionaria certifica que las obras que construirá para proveer acceso a los remanentes serán construidas bajo las especificaciones requeridas por la propia Autoridad de Carreteras y ésta permitirá el acceso de los referidos remanente dentro de su mejor uso. El diseño y construcción de las obras antes pactadas se realizarán siguiendo las especificaciones que se indican en la moción informativa que lleva fecha del 31 de octubre de 2002 presentada por la parte peticionaria.

6. De no cumplir la peticionaria con los acuerdos antes expresados dentro de los plazos pactados, la parte con interés podrá exigir el cumplimiento dentro de esta misma causa de acción y así lo acuerdan y aceptan las partes.

7. La parte con interés se reserva el derecho a instar cualquier reclamación de daños que pueda causar el incumplimiento por la peticionaria con las especificaciones y los acuerdos contenidos en la moción informativa aludida en el párrafo 5 de esta estipulación. ”

Así las cosas, el 12 de diciembre de 2002, el TPI emitió las sentencias en ambos casos, mediante las cuales aprobó las estipulaciones transaccionales acordadas por las partes.
Después de realizar gestiones infructuosas por más de tres años para que la ACT cumpliera con -la obligación de construir los accesos estipulados, el 17 de mayo de 2005, la parte con interés, Sucn. Jacobo Ortiz Romeu, presentó Moción Cumpliendo con Orden, Solicitud de Vista Urgente y de Remedios en el caso K EF1998-0410. Alegó, que las obras de la ACT en los predios expropiados inutilizaron el camino existente y ocasionaron que se formaran humedales en el remanente; y que aún no se había comenzado la construcción del acceso estipulado. Solicitó que se ordenara a la ACT compensar la pérdida de uso del remanente, así como de las oportunidades de venta de dicho remanente por razón de haberse privado todo acceso al mismo. Además, solicitó que se celebrara una vista con carácter de urgencia en este caso y en el K EF2004-0691. 
*646 En respuesta, la ACT señaló que estudios realizados demostraban que esos terrenos tienen problemas de drenaje, por acciones de los colindantes, desde antes de que la ACT comenzara a realizar los trabajos relacionados con la adquisición de los terrenos. Por tanto, reclamó que la agencia no era responsable por la creación de los humedales.
El 5 de septiembre de 2006, el TPI celebró una vista. Durante la misma, la representación legal de la ACT indicó que luego de analizar el caso con personal pericial de la agencia, y debido a la situación del terreno, era imposible construir el acceso, por lo que notificó la intención de la ACT de adquirir el remanente. Como las partes no llegaron a un acuerdo, el TPI pautó para el 14 de noviembre de 2006 una vista evidenciaría de daños. No conforme con dicha determinación, la ACT interpuso Solicitud de Reconsideración. Reiteró que era imposible o extremadamente oneroso construir el acceso estipulado debido a la situación existente en el terreno. A tales efectos, solicitó por primera vez que se permitiera una enmienda a la petición original con el propósito de incluir la adquisición del remanente enclavado. También, la ACT presentó Moción en Solicitud de Orden, a los fines de que la vista de daños señalada para el 14 de noviembre de 2006 se convirtiera en una para discutir los señalamientos expuestos en la solicitud de reconsideración. Mediante orden emitida el 2 de octubre de 2006, el TPI declaró no ha lugar ambas solicitudes.
Inconforme, oportunamente la ACT acudió ante nos señalando que:

“Erró el Honorable Tribunal de Primera Instancia al declarar no ha lugar y no considerar la doctrina de imposibilidad de cumplimiento planteada por la parte peticionaria en el caso de autos.

Erró el Honorable Tribunal de Primera Instancia al declarar no ha lugar y no considerar dejar sin efecto la conferencia pautada para el 14 de noviembre de 2006 y convertir la misma en una para dilucidar los aspectos relacionados a la solicitud de enmienda a la petición original de expropiación, la cual correspondía como cuestión de derecho. ”

Arguye la ACT que el TPI debió permitir que se enmendara la petición de expropiación forzosa, a los fines de que ésta pudiera adquirir la parcela que constituye el remanente de la finca expropiada. Ello, en vista de que se hace imposible o extremadamente oneroso construir el acceso estipulado debido a las condiciones del terreno. Resolvemos.
Las partes con interés recurridas presentaron Moción Solicitando Desestimación de la Solicitud de Certiorari Por Falta de Jurisdicción. Atendida la misma, la declaramos no ha lugar, y pasamos a resolver.
II
La transacción es un contrato y como tal se perfecciona por el mero consentimiento y desde entonces obliga no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes con la buena fe, al uso y a la ley. Art. 1210 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3375. Mediante el contrato de transacción, las partes, dan, prometen o retienen, cada una alguna cosa, evitando así la provocación de un pleito o poniendo fin al que había comenzado. Art. 1709 del Código Civil, 31 L.P.R.A. see. 4821. Además, la transacción tiene para las partes la autoridad de la cosa juzgada. Art. 1715 del Código Civil, 31 L.P.R.A. see. 4827.
Hay dos clases de contratos de transacción: el judicial y el extrajudicial. Ñeca Mortgage Corporation v. A & W Developers S.E., 137 D.P.R. 860, 870 (1995); Citibank v. Dependable Ins. Co., 121. D.P.R. 503, 512 (1988); A. Martínez & Co. v. Long Construction Co., 101 D.P.R. 830, 834 (1973).
El contrato de transacción judicial es aquél en el cual las partes acuerdan una transacción luego de haber comenzado el pleito judicial, y solicitan incorporar el acuerdo al proceso en curso, terminando de esta forma el *647 pleito en cuestión. Cuando una de las partes no cumple con lo estipulado en una transacción judicial, como regla general, no procede la resolución. En estos casos, el perjudicado puede solicitar inmediatamente que lo convenido se lleve a efecto vía el procedimiento de apremio, pues ello tiene para las partes la misma fuerza que una sentencia fírme. Art. 1715 del Código Civil, supra; Ñeca Mortgage Corp. v. A & W Developers, supra, Citibank v. Dependable Ins. Co. Inc., supra, a la pág. 516; Canino v. Santiago Bellaflores, Inc., 78 D.P.R. 778, 780 (1955)
Por el contrario, se denomina contrato de transacción extrajudicial aquél en el cual las partes antes de comenzar el pleito o estando aún el pleito pendiente llegan al acuerdo sin la intervención del tribunal, en cuyo caso bastará con un mero aviso de desistimiento. Ñeca Mortgage Corporation v. A & W Developers S.E., supra a las págs. 870-874.
Al contrato de transacción extrajudicial le gobiernan las reglas generales de extinción de los contratos, por lo cual cuando uno de los obligados no cumple las obligaciones del contrato el perjudicado tiene la facultad de escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. Art. 1077 del Código Civil, 31 L.P.R.A. see. 3052; Neca Mortgage Corporation v. A & W Developers S.E., supra, a las págs. 876-877; Alvarado v. Bonilla, 86 DPR 490, 502 (1962); Riera v. Macias Vda. de Riera, 42 DPR 579, 589-590 (1931). En estos casos, el tribunal evaluará la eficacia del contrato y concederá la resolución, siempre y cuando se cumplan con los requisitos establecidos en el Artículo 1077 del Código Civil, supra.
Para que el incumplimiento conlleve la resolución del contrato es menester que la obligación incumplida sea una esencial o que su cumplimiento constituya el motivo del contrato para la otra parte. Ramírez Anglada v. Club de Palmas, 123 D.P.R. 339, 347-348 (1989). El mero incumplimiento de obligaciones accesorias o complementarias, que no constituyen el verdadero motivo para celebrar el contrato y que se incorporan a éste para completar o aclarar las estipulaciones de los contratantes, puede dar lugar a una acción de daños y perjuicios o cualquiera otra que justifique las circunstancias de cada caso, pero nunca a la acción resolutoria aludida. Neca Mortgage Corporation v. A & W Developers S.E., supra, a la pág. 875; Ramírez Anglada v. Club de Palmas, supra. Esta norma restrictiva en cuanto a la resolución de contratos responde al interés de evitar el abuso en el ejercicio de las acciones resolutorias y de promover el cumplimiento de los contratos. Neca Mortgage Corporation v. A & W Developers S.E., supra; Ramírez Anglada v. Club de Palmas, supra.
De otra parte, en nuestra jurisdicción se le reconoce al tribunal de instancia, amplia discreción para pautar el manejo de los casos ante su consideración, a los fines de lograr la búsqueda de la verdad y que sean adjudicados de manera rápida y correctamente. El tribunal apelativo no intervendrá con el ejercicio de tal autoridad, excepto que se demuestre que medió craso abuso de discreción, que hubo una interpretación o aplicación errónea de una norma procesal o sustantiva de derecho y que su intervención evitará perjuicio sustancial a la parte alegadamente afectada. Meléndez v. Caribbean Int’l. News, 151 D.P.R. 649, 664 (2000); Lluch v. España Service Sta., 117 D.P.R. 729, 745 (1986).
Nuestro ordenamiento procesal ha reconocido el derecho de revisión de resoluciones interlocutorias emitidas por el TPI, mediante el recurso de certiorari a expedirse discrecionalmente por el Tribunal de Apelaciones, para corregir los errores cometidos por el foro de instancia. Art. 4.006(b), Ley de la Judicatura de 2003,4 L.P.R.A. sec. 24y. Véase, Negrón v. Srio. de Justicia, 154 D.P.R. 79, 91 (2001).
El Reglamento del Tribunal de Apelaciones dispone los criterios que deben examinarse para expedir un auto de certiorari. Entre otros, están: (1) si la etapa del procedimiento en que se presenta el recurso es la más propicia para su consideración; (2) si la expedición del auto no causa fraccionamiento indebido del pleito y una dilación innecesaria para su adjudicación final; y (3) si la expedición del auto evita un fracaso de la justicia Regla 40 (E), (F) y (G).
*648 La denegatoria de un auto de certiorari no constituye una adjudicación en los méritos, es el ejercicio de la facultad discrecional del tribunal apelativo para no intervenir a destiempo con el trámite pautado por el foro de instancia, evitando que se dilate innecesariamente la resolución final del pleito. Negrón v. Srio. de Justicia, supra, pág. 93. La parte afectada con la denegatoria de expedirse el auto de certiorari, puede revisar el dictamen final cuando éste se emita, ante el foro intermedio apelativo. Bco. Popular de P.R. v. Mun. de Aguadilla, 144 D.P.R. 651, 658, nota 2 (1997).
III
Según alega la ACT, erró el TPI al no considerar la solicitud de enmienda a la petición de expropiación, ni la doctrina de imposibilidad de cumplimiento.
Hemos examinado la minuta de la vista celebrada el 5 de septiembre de 2006 y no surge de la misma que se formulara al TPI solicitud alguna para enmendar la petición original de expropiación, ni que dicho Foro hubiese emitido determinación alguna sobre tal posibilidad. Lo que pretende la ACT es que el TPI atienda vía reconsideración un asunto sobre el cual no existe una determinación de dicho Foro. Ello convierte dicha solicitud en un asunto prematuro. Además, nada impide que la ACT someta oportunamente una solicitud de expropiación del remanente enclavado, bien por vía de enmienda según los rigores de la Regla 58.6 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 58.6, o como una petición nueva bajo la Regla 58.3, según proceda. Lo único que se indica en la minuta es que la parte con interés acudió al TPI en el caso K EF1998-0410 exigiendo que la ACT construyera el acceso estipulado; que durante la vista la representación legal de la ACT consignó la imposibilidad de cumplir con lo acordado; que por razón de ello, la ACT informó que se proponía adquirir el remanente, pero “[q]ue no se sabe si lo harán en los casos del 2004 o en un caso nuevo”. 
Surge además de la minuta, que el TPI pautó una vista evidenciaría para el 14 de noviembre de 2006, para “determinar en cuanto a los daños causados por estar la finca enclavada por cuatro años”. No surge de la minuta que el TPI se hubiese negado a considerar la doctrina de imposibilidad de cumplimiento. Tampoco puede inferirse que el TPI se negó a considerar la imposibilidad de cumplimiento al declarar no ha lugar la Moción en Solicitud de Orden presentada por la ACT el 27 de septiembre de 2006. En dicha moción lo que se solicita es que se posponga la consideración de daños y se utilice la vista para discutir el planteamiento de imposibilidad de cumplimiento. Además, nada impide que la ACT presente prueba sobre la imposibilidad de cumplimiento en la vista de daños.
Por otro lado, en lo que respecta a la compensación a la que tiene derecho la parte con interés en un procedimiento de expropiación forzosa, ésta toma la forma de una indemnización, la cual tiene como finalidad colocar a la parte afectada en una posición similar a la que se encontraría si su propiedad no hubiese sido expropiada o incautada por el Estado. Es por ello que como parte de la indemnización, el Estado viene obligado a compensar los daños emergentes a la propiedad, incluyendo aquéllos causados a un remanente. Véase, E.L.A. v. 12,974.78 metros cuadrados, 90 D.P.R. 506 (1964); E.L.A. v. Fonalledas Córdova, 84 D.P.R. 573 (1962); E.L.A. v. Bravo, 79 D.P.R. 779 (1956); Pueblo v. García, 66 D.P.R. 504 (1946). 
Se ha resuelto que debe compensarse la destrucción del derecho de acceso. Texaco Inc. v. Srio de Obras Públicas, 85 D.P.R. 712, 726 (1962). Ello constituye para todos los efectos una confiscación (“taking"), ya que una propiedad enclavada pierde su valor económico, y por lo tanto, el dueño debe ser compensado. De otra manera, la garantía constitucional que protege contra el despojo de propiedad sin el debido proceso de ley no tendría efecto práctico. Esto es así, independientemente de que la privación total de acceso sea consecuencia de una expropiación forzosa o de una reglamentación del Estado en protección del bienestar general. E.L.A. v. Rodríguez, 103 D.P.R. 636, 641 (1975). De esta manera, observamos que el dueño de un predio de terreno expropiado puede tener una reclamación válida cuando aduce que ha sufrido daños en el remanente.
*649 Al aplicar estos principios al caso de autos, resulta evidente que la parte con interés tiene un derecho a que se le compense por los daños ocasionados al remanente de la finca expropiada. El hecho de que el TPI hubiese determinado celebrar la vista de daños a pesar de la solicitud de suspensión de la vista por parte de la ACT, no constituye un error de derecho o abuso de discreción por parte de dicho foro. La ACT no ha demostrado que el TPI hubiera actuado de manera arbitraria al denegar las solicitudes interpuestas, sino que su dictamen persigue aclarar las controversias del pleito para su más rápida disposición. El TPI tiene amplia discreción para pautar el manejo de los casos ante su consideración, a los fines de lograr la búsqueda de la verdad y que sean adjudicados de manera rápida y correcta. No surge del expediente ante nos que el TPI haya privado a la ACT de derecho alguno. De ahí que no habremos de intervenir con las órdenes recurridas en esta etapa de los procedimientos.
IV
Por los fundamentos que anteceden, se deniega la expedición del auto solicitado y declara no ha lugar la moción en auxilio de jurisdicción.
Notifíquese inmediatamente a las partes por teléfono o fax y por la vía ordinaria.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal,
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIOS 2007 DTA 4
1. En dicho caso, alegadamente, se expropió un área de 493.9448 metros cuadrados y luego se ocupó físicamente un área de 3,596.58 metros cuadrados sin depositarse cantidad alguna.
2. La finca lleva enclavada aproximadamente cuatro años.
3. En la vista de 5 de septiembre de 2006 había informado que la petición de expropiación del remanente sería presentada dentro de uno de los dos casos comenzados en el 2004 o en un caso nuevo.
4. Véase, MINUTA, a las págs. 7-9 del apéndice del recurso, transcrita el 11 de septiembre de 2006.
5. Véase pág. 2 de la MINUTA, a la pág. 8 del apéndice del recurso.
6. En Pueblo v. García, supra, págs. 511-513, el tribunal reconoció la procedencia de los daños por desmembración causados a una casa enclavada en el remanente de la finca principal de la parte con interés; en E.L.A. v. Bravo, supra, pág. 782, se consideraron los daños causados al titular del remanente de una finca expropiada porque de la forma en que se llevó a cabo la segregación de la finca, dicho remanente perdió la flexibilidad necesaria para dedicarla al mejor uso de que era susceptible la finca principal; en E.L.A. v. Fonalledas Córdova, supra, págs. 588-592, el tribunal consideró la pérdida en valor del remanente experimentado en un procedimiento de expropiación forzosa donde el dueño del terreno expropiado reclamó compensación por los daños sufridos por dicho remanente en tal concepto; y en E.L.A. v. 12,974.78 metros cuadrados, supra, págs. 508-509, se consideró si eran compensables como daños por segregación los costos de remoción de las estructuras de una vaquería que quedaron enclavadas a una distancia menor que la exigida por ley, como consecuencia de la expropiación que para fines residenciales había experimentado la finca, propiedad de la parte con interés.